**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| EUGENIO ALVAREZ, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,<br><br>　　　　　Defendant. | **Civil Action No: 4:24-cv-03597** |

**[REDACTED] DECLARATION OF KATHERINE M. AIZPURU IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION, APPOINTMENT AS CLASS REPRESENTATIVE, AND APPOINTMENT AS CLASS COUNSEL**

I, Katherine M. Aizpuru, declare as follows:

1.　　I am an attorney admitted *pro hac vice* to appear in this Court, and attorney of record for Plaintiff in the above-captioned case. I submit this declaration in support of Plaintiff's Motion for Class Certification, Appointment as Class Representative, and Appointment as Class Counsel ("Motion for Class Certification").

2.　　I make this declaration based on my personal knowledge and the records of my law firm. I could and would testify competently to the matters set forth herein, if called upon to do so.

**Exhibits in Support of Motion for Class Certification**

3.　　The following documents are cited as exhibits in the Motion for Class Certification.

1

4.      Attached as **EXHIBIT 1** is a true and correct copy of the Order Granting Class Certification in *Montesi v. Seterus, Inc.*, No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cty.).

5.      Attached as **EXHIBIT 2** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez000509 - 11.

6.      Attached as **EXHIBIT 3** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez000439 - 48.

7.      Attached as **EXHIBIT 4** is a true and correct copy of Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission served January 13, 2025.

8.      Attached as **EXHIBIT 5** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez002922 - 27.

9.      Attached as **EXHIBIT 6** is a true and correct copy of the report of Plaintiff's Expert, Nelson Locke.

10.     Attached as **EXHIBIT 7** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez001634-001649.

11.     Attached as **EXHIBIT 8** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez0001608 - 11.

12.     Attached as **EXHIBIT 9** is a true and correct copy of an excerpt of the document produced by Defendant in discovery as Shellpoint_Alvarez001804.

13.     Attached as **EXHIBIT 10** is a true and correct copy of an excerpt of the document produced by Defendant in discovery as Shellpoint_Alvarez001805.

14.     Attached as **EXHIBIT 11** is a true and correct copy of excerpts from the

2

30(b)(6) testimony of Defendant's corporate witness, Marlene Farmer.

15. Attached as **EXHIBIT 12** is a true and correct copy of excerpts from the 30(b)(6) testimony of Defendant's corporate witness, Lauren Haberlan.

16. Attached as **EXHIBIT 13** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez001612 - 15.

17. Attached as **EXHIBIT 14** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez001616 - 17.

18. Attached as **EXHIBIT 15** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez000808 - 09.

19. Attached as **EXHIBIT 16** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez_001189 - 94.

20. Attached as **EXHIBIT 17** is a true and correct copy of the report of Plaintiff's Expert, Arthur Olsen.

21. Attached as **EXHIBIT 18** is a true and correct copy of excerpts from the deposition transcript of Plaintiff's Expert, Arthur Olsen.

22. Attached as **EXHIBIT 19** is a true and correct copy of excerpts from Defendant's First Supplemental Objections and Responses to Plaintiff's First Set of Requests Interrogatories served June 3, 2025.

23. Attached as **EXHIBIT 20** is a true and correct copy of excerpts from Defendant's Second Supplemental Objections and Responses to Plaintiff's First Set of Requests Interrogatories served December 12, 2025.

24. Attached as **EXHIBIT 21** is a true and correct copy of the document

3

produced by Plaintiff in discovery as ALVAREZ00353-ALVAREZ00373.

25.     Attached as **EXHIBIT 22** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00374-ALVAREZ00380.

26.     Attached as **EXHIBIT 23** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00382-ALVAREZ00384.

27.     Attached as **EXHIBIT 24** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00385-ALVAREZ00387.

28.     Attached as **EXHIBIT 25** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00415-ALVAREZ00418.

29.     Attached as **EXHIBIT 26** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00449-ALVAREZ00454.

30.     Attached as **EXHIBIT 27** is a true and correct copy of the document produced by Defendant in discovery as Shellpoint_Alvarez001942 - 1945.

31.     Attached as **EXHIBIT 28** is a true and correct copy of the document produced by Plaintiff in discovery as ALVAREZ00003 - 04.

32.     Attached as **EXHIBIT 29** is a true and correct copy of excerpts from the deposition transcript of Plaintiff Eugenio Alvarez.

33.     Attached as **EXHIBIT 30** is a true and correct copy of the Tycko & Zavareei LLP Firm Resume.

### Work on Behalf of the Proposed Class

34.     I am one of the lead attorneys on this matter and have personal knowledge of the details of the litigation and the evidence in this case. I seek appointment as Class

Counsel along with my co-counsel from Bailey & Glasser LLP, who are also well-qualified attorneys who have contributed significantly to the case.

35. We have devoted a significant amount of time and money to this case. Prior to filing, Plaintiff's counsel interviewed Plaintiff and reviewed his documents, drafted a detailed Complaint, and drafted and sent pre-suit notice to Defendant. Plaintiff's counsel also investigated Defendant's fee practices and researched Texas law.

36. The case then moved to discovery. Plaintiff's counsel worked cooperatively with Defendant's counsel to agree upon a schedule for the case. Plaintiff's counsel drafted interrogatories, requests for production, and requests for admission. Plaintiff's counsel served Plaintiff's first set of requests for Production on November 27, 2024, and served Plaintiff's first set of interrogatories and requests for admission on December 12, 2024. After Defendant began producing documents, Plaintiff's counsel reviewed thousands of pages of discovery. Defendant served its requests for production on Plaintiff on December 18, 2024, and its interrogatories on December 23, 2024. Plaintiff's counsel worked with Plaintiff to prepare discovery responses, review his documents, and produce Plaintiff's documents to Defendant. Plaintiff's counsel also met and conferred with Defendant's counsel via teleconference on February 11, June 10, and September 25 to discuss the parties' discovery disputes and avoid the need for motions practice. Counsel for the parties also exchanged numerous letters and emails regarding class and individual discovery.

37. Plaintiff's counsel also took depositions of two corporate witnesses and Defendant's expert. And, Plaintiff's counsel prepared Plaintiff for his deposition, and defended the deposition.

38.    Plaintiff's counsel also prepared a mediation statement and attended a mediation before Stephen Dalesio of Dalesio Law Mediation.

39.    As of January 30, 2026, Plaintiff's counsel have spent approximately 620 hours and incurred all of the litigation costs in pursuing this action on behalf of the proposed Class.

40.    Plaintiff Eugenio Alvarez has been involved with the litigation since its inception. To date, he has assisted in initial factual investigation, reviewed pleadings, searched for and produced documents, responded to interrogatories and requests for admission, and prepared and sat for a deposition. He frequently initiates contact with Proposed Class Counsel and has spoken with us at length throughout the case.

### Qualifications

41.    Tycko & Zavareei LLP ("TZ") was founded in 2002 and has established a long and successful record of litigating complex cases. With offices in Washington, D.C., Oakland, CA, and Los Angeles, CA, our lawyers routinely handle large and complex matters throughout the country. Our lawyers have achieved remarkable results through trials and settlements in landmark cases of great public interest. Our settlements have netted our clients hundreds of millions of dollars in monetary relief, and changes in practices by banks, mortgage servicers, and other businesses that have real impacts on the day-to-day lives of our clients. A copy of our firm resume is attached as **EXHIBIT 30.**

42.    TZ has held numerous leadership roles in high-stakes class action litigation, including leadership roles in certified class actions against national and regional banks for transaction fees, class actions against mortgage servicers for pay-to-pay fees, class actions

involving product labeling and defects, class actions for TCPA violations, and consumer privacy class actions. Following these appointments, TZ's resources and significant experience litigating complex multistate class actions has inured to the benefit of hundreds of thousands of consumers. For instance, as co-lead counsel in *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422 (S.D. Cal. 2018), TZ secured a class action settlement valued at $66.6 million along with $1.2 billion in injunctive relief, a result the court described as a "remarkable" accomplishment achieved through "tenacity and great skill." *Id.* at 432. Indeed, recently my law partner, Hassan Zavareei, was named a Law360 Titan of the Plaintiffs Bar in recognition of his impact on consumer class actions.

43.     TZ has been named class counsel and settlement class counsel and achieved excellent results for consumers in many cases filed in state and federal court, including pay-to-pay fee cases. In the pay-to-pay space, we were recently appointed class counsel in *Custer v. Dovenmuehle Mortg., Inc.*, 2025 WL 3677281 (M.D.N.C.), after contested class certification briefing. TZ was also appointed settlement class counsel in *McFadden v. Mr. Cooper*, No. 20-cv-0166 (D.D.C.) (settled for $3.5 million common fund); *Thomas-Lawson v. Carrington Mortgage Servs., LLC*, No. 20-cv-7301 (C.D. Cal.) (settled along with *Alexander v. Carrington Mortgage Servs., LLC*, No. 20-cv-0250 (D. Md.) for $18 million common fund); *Elbert v. Roundpoint Mortgage Co.*, No. 20-cv-0250 (N.D. Cal.) (settled for $1.6 million common fund); *Bingham v. Caliber Home Loans*, No. 20-cv-0338 (M.D.N.C.) (settled for $5 million common fund along with *Phillips v. Caliber Home Loans*, No. 19-cv-2711 (D. Minn.)); *Fernandez v. Rushmore*, No. 12-cv-0621 (C.D. Cal.) (settled for $1.6 million common fund); *Silveira v. M&T Bank*, No. 19-cv-6958 (C.D. Cal.)

7

(settled for $3.3 million common fund); *Lembeck v. Arvest Central Mortgage Co.*, No. 20-cv-3277 (N.D. Cal.) (settled for $1.47 million common fund).

44.　　TZ has also been appointed settlement class counsel and achieved excellent results for classes of consumers in numerous other kinds of cases. *See, e.g., Dusko v. Delta Air Lines*, No. 1:20-cv-01664-ELR (N.D. Ga.) ($27.3 million class settlement for failure to provide promised refunds); *Lash Boost Cases*, No. CJC-18-004981 (Cal. Super. Ct.) ($38 million class settlement in litigation involving eyelash growth serum); *Wang v. StubHub, Inc.*, No. CGC-18-564120 (Cal. Super. Ct.) (class settlement that provided up to $20 as a cash option, or the option of a pro rata share of a $20 million credit common fund in false advertising case alleging that StubHub conducted an unlawful bait and switch by only listing the amount of fees at the very end of web-based transactions); *Wallace v. Wells Fargo & Co.*, No. 17-CV-317775 (Cal. Super. Ct.) ($10 million class settlement in overdraft fee litigation); *Simmons v. Apple Inc.*, No. 17-CV-312251 (Cal. Super. Ct.) ($9.75 million settlement in case alleging false advertising of Apple Powerbeats 2 earphones); *In re GEICO Insurance Co. Litig.*, No. 4:19-cv-03768-HSG (N.D. Cal.) (multi-million dollar settlement in case alleging breach of insurance contract). Additional examples of cases in which TZ was appointed class counsel, lead counsel, and/or settlement counsel are listed in our Firm Resume.

45.　　I am a Partner in TZ's Washington, D.C. office. I am a member in good standing of the bars of the District of Columbia, the Commonwealth of Massachusetts, and the State of New York, as well as numerous federal courts. I earned my J.D. from Harvard Law School, *cum laude*, in 2014. I received my Bachelor of Arts degree, with High Honors,

from Swarthmore College in 2010. After law school, I clerked for the Honorable Catherine F. Easterly of the District of Columbia Court of Appeals from 2014 to 2015, and for the Honorable Theodore D. Chuang of the U.S. District Court for the District of Maryland from 2016 to 2017. From 2017 to 2021, I was an Associate at TZ. In 2021, I joined the U.S. Department of Justice, where I represented the United States in commercial litigation and bankruptcy matters, and obtained favorable settlements that saved taxpayers millions of dollars. In 2022, I joined the Division of Financial Practices at the Federal Trade Commission. I returned to TZ as a Partner in 2024.

46.     I dedicate my practice to advocating for consumers and representing whistleblowers who expose fraudulent practices. During my eleven years of practice, I have litigated a wide array of class actions, including for breach of contract, consumer protection, product defect, privacy, false advertising, and more. In particular, I have significant experience litigating cases involving pay-to-pay fees. I am currently a lead attorney on the following pay-to-pay fee cases: *Allard v. PHH Mortgage Corp.*, No. 1:23-cv-1040 (D.N.J.); *Bell v. Select Portfolio Servicing, Inc.*, No. 1:25-cv-0004 (M.D.N.C.); *Cornish-Scott v. Potomac Electric Power Co.*, No. 2025-CAB-3344 (D.C. Sup. Ct.); *Custer v. Dovenmuehle Mortgage, Inc.*, No. 1:24-cv-00306 (M.D.N.C); *Hardnett v. Select Portfolio Servicing, Inc.*, No. 1:24-cv-1534 (D.D.C.); *Johnson v. Select Portfolio Servicing, Inc.*, No. 24-cv-1990 (D. Or.); *Snowden v. Select Portfolio Servicing, Inc.*, No. 20-cv-3837 (E.D.N.Y.); and *Williams v. Pennymac Loan Services LLC*, No 1:25-cv-00276 (M.D.N.C.). In addition, from 2019 to 2021, as an Associate at TZ, I served as active counsel of record in *McFadden*, *Thomas-Lawson*, *Elbert*, *Bingham*, *Fernandez*, *Silveira*, and *Lembeck*. In

9

those cases, I was heavily involved in briefing substantive motions and discovery as well as managing the day-to-day litigation responsibilities of the files. My work on those files led directly to the great results achieved for consumers.

47.     In addition to pay-to-pay cases, I have significant experience in other complex class actions. Courts have appointed me to leadership roles on the plaintiffs' executive committees in the following consolidated litigations: *Smith v. Effortless Office Enterprises, LLC*, No. 25-cv-1123 (D. Nev.); *Reichbart v. Financial Business & Consumer Solutions, Inc.*, No. 2:24-cv-1876 (E.D. Pa.). *Wilson v. Frontier Communications Parent Inc.*, No. 3:24-cv-1418 (N.D. Tex.); *In re: Lurie Children's Hospital Data Security Litigation*, No. 1:24-cv-5503 (N.D. Ill.); *Wahab v. Boston Children's Health Physicians, LLP*, No. 73692/2024 (N.Y. Sup. Ct.).

48.     I am also currently leading complex class actions and cases in other consumer protection areas. *See, e.g.*, *Tempest v. Safeway, Inc.*, No. 24-cv-6553 (N.D. Cal.) (false reference prices, recently defeated motion to compel arbitration); *Richard E. Obringer PAC v. CardConnect Corp.*, No. 24-cv-3034 (E.D. Pa.); *National Association of Consumer Advocates v. Gemini Trust Co.*, No. 2024 CAB 3999 (D.C. Sup. Ct.); *Robinson v. Trulieve Inc.*, No. 24-cv-0391 (N.D. Fla.); *Kazmucha v. Fitness Alliance LLC*, No. 25-cv-1485 (D. Ariz.); *Ferrell v. Capital One*, No. 25-cv-0091 (E.D. Va.); *Berlinger v. Viagogo Inc.*, No. 25-cv-4380 (S.D.N.Y.); *Head v. Underdog Sports LLC*, No. 4:25-cv-5542 (N.D. Cal.); *Zhen v. DraftKings, Inc.*, No. 25-cv-4618 (N.D. Cal.).

49.     My other notable class action experience includes representing classes of consumers in cases that led to significant relief. *See, e.g.*, *Farrell v. Bank of America*, No.

16-cv-0492 (S.D. Cal.) (settlement valued at $66.6 million plus injunctive relief over $1.2 billion); *Wang v. StubHub, Inc.*, No. CGC-18-56412 (Cal. Sup. Ct., S.F. Cnty.) (settlement valued over $20 million); *Roberts v. Capital One Financial Corp.*, No. 16-cv-4841 (S.D.N.Y.) ($17 million common fund); *Lambert v. Navy Federal Credit Union*, No. 19-cv-0103 (E.D. Va.) ($16 million common fund); *Simmons v. Apple Inc.*, No. 17-cv-312251 (Cal. Sup. Ct., Santa Clara Cnty.) ($9.75 million common fund); *Smith v. Fifth Third Bank*, No. 18-cv-0464 (S.D. Ohio) ($5.2 million common fund). I was named a SuperLawyers Rising Star in 2020, 2021, and 2025.

50.    During my time in the government, I achieved significant victories for consumers. At the FTC, I led the Commission's first investigation into and litigation against a major cryptocurrency company, its affiliates, and three former executives. In that case, I negotiated and obtained a settlement including a monetary judgment of $4.7 billion and significant injunctive relief. *See Federal Trade Commission v. Celsius Network, Inc.*, 23-cv-6009 (S.D.N.Y. Aug. 16, 2023), Dkt. 27. I also obtained restraining orders halting student loan debt relief scams and ultimately negotiated consent orders requiring the principals to turn over their real estate, luxury cars, and bank accounts for consumer redress, and which banned the principals from the debt relief and telemarketing industries. *Federal Trade Commission v. SL Finance LLC*, No. 23-cv-698 (C.D. Cal. Oct. 24, 2023), Dkt. 56; *Federal Trade Commission v. BCO Consulting Servs., Inc.*, No. 23-cv-699 (C.D. Cal. Oct. 11, 2023), Dkt. 69. In recognition of my work, in 2023 I was awarded the Bureau Director's Award for "outstanding contributions" to the Bureau of Consumer Protection.

51.    I am supported on this matter by Robin Bleiweis, a Public Interest Fellow at

TZ. TZ's prestigious public interest fellowship supports early-career attorneys who seek to use their law degrees for the common good. Fellows spend two years at the firm gaining a wide array of litigation experience, and complete a placement at the nonprofit of their choice. Ms. Bleiweis earned her law degree with honors from the University of North Carolina School of Law in 2024, where she provided over 100 hours of pro bono service on behalf of the Carolina Abortion Fund and the Compass Center for Women & Families. She also spent her 3L year as a clinical law student in UNC's Civil Legal Assistance Clinic, where she argued and won the first case in a North Carolina state court seeking the transfer of an incarcerated intersex woman from a men's prison to a woman's prison. She also represented workers experiencing wage theft and negotiated with their employer to secure a confession of judgment and a payment plan. Since joining TZ, Ms. Bleiweis has gained experience on Pay-to-Pay cases, including this one, and developed expertise in federal and state debt collection law. She was most recently appointed class counsel along with me and our firm in *Custer*.

52.     The TZ team has performed substantial work on this case and have made meaningful contributions on behalf of the class. Together with our staff, TZ has spent over 170 hours on behalf of the proposed class.

53.     TZ has the resources and experience to litigate a case of this magnitude. We do not accept third-party litigation funding and will not for this case.

54.     I respectfully request that the Court grant class certification and appoint me, Ms. Bleiweis, and TZ as Co-Lead Class Counsel along with Bailey & Glasser LLP.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on January 30, 2026, in Washington, D.C.

_/s/ Katherine Aizpuru_
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Kaizpuru@tzlegal.com
202-973-0900

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AA
CASE NO. 50-2015-CA-010910-XXXX-MB

RACHELE CIBULA,
JAMES MONTESI,
BELKIS VELAZQUEZ,
NESTOR MATO,
     Plaintiff(s)
v.
SETERUS INC,
     Defendant(s).

_____/

## ORDER GRANTING CLASS CERTIFICATION

Plaintiffs James Montesi, Belkis Velazquez and Nestor Mato moved for class certification of their claims that Defendant Seterus, Inc. assessed improper "pay-to-pay fees" and thereby breached the parties' contract and also violated the Florida Consumer Credit Practices Act ("FCCPA"), Fla. Stat. § 559.72(9), as well as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.203; 501.204. The Court held a hearing on Plaintiffs' Motion on March 4, 2019 and had previously held hearings on April 27, 2018; June 14, 2018; and July 26, 2018 regarding class certification in this matter. Upon consideration of the pleadings, memoranda of law and all exhibits thereto, as well as the parties' arguments at the hearings, the Court rules as follows:

### Findings of Fact

The parties do not dispute that Defendant charged Plaintiffs $5.00 each time they made their monthly mortgage payment by internet and $10.00 each time they made their monthly mortgage payment by phone ("Pay-to-Pay fees").

The parties do not dispute that Defendant charged Plaintiff Montesi $5.00 each time he made his monthly mortgage payment by internet and $10.00 each time he made his monthly mortgage payment by phone.

The parties do not dispute that Defendant charged Plaintiff Velazquez $10.00 each time she made her monthly mortgage payment by phone.

FILED: PALM BEACH COUNTY, FL, SHARON R. BOCK, CLERK, 03/27/2019 05:34:55 PM

The parties do not dispute that Defendant charged Plaintiff Mato $10.00 each time he made his monthly mortgage payments by phone.

Plaintiffs allege that Defendant contracts with Western Union to process all transactions in Florida at a cost lower than $1.00 per transaction.

Defendant states that it no longer charges Pay-to-Pay fees to any person with a Florida address effective February 20, 2016. McNeal Aff. ¶20.

Plaintiffs allege that these Pay-to-Pay fees violate the uniform covenants in the Mortgage Agreement, which states that the "[l]ender may not charge fees that are expressly prohibited by this Security Interest or by Applicable Law" and that "[a]ny amounts disbursed by Lender ... shall become additional debt of Borrower."

Plaintiffs allege that Defendant overcharged Plaintiffs and the proposed class members on every monthly debit card payment/debit ACH transaction, thereby collecting profits from Florida borrowers on hundreds of thousands of transactions in violation of applicable law. *See Bradley v. Franklin Collection Serv., Inc.,* 739 F.3d 606 (11th Cir. 2014) (under corollary FDCPA, 15 U.S.C. §1682f, defendant violated statute when it collected a debt that included a collection fee when plaintiff had only agreed to pay the actual costs of collection). Plaintiffs also allege that Defendant cannot charge more for Pay-to-Pay fees than the amount Defendant pays Western Union to process the Pay-to-Pay transactions. Plaintiffs' claims are that the Defendant violated the FCCPA (Count I), the FDUTPA (Count II), and breached the Mortgage Agreement (Count III).

Plaintiffs seek certification under Florida Rule of Civil Procedure 1.220(a) and (b)(3) for the following proposed class:

> All persons with a Florida address to whom Seterus and its agents charged, collected, or attempted to collect fees for the use of debit card or debit automatic clearing house ("ACH") mortgage payments during the applicable statutes of limitations for Representative Plaintiffs' claims through the date a class is certified.

Plaintiff Cibula filed her Class Action Complaint on September 28, 2015, asserting claims on behalf of a class of Florida borrowers. On August 7, 2018, the Court denied Ms.

Cibula's motion for class certification without prejudice and allowed Plaintiff Cibula thirty days to amend her complaint and join other class members as parties to this action.

On August 31, 2018, Plaintiffs James Montesi, Belkis Velasquez, and Nestor Mato joined this action upon the filing of a Second Amended Complaint. Plaintiffs Montesi, Velazquez and Mato asserted class action claims based on Defendant's allegedly illegal conduct in charging and collecting Pay-to-Pay fees from Plaintiffs and class members.

## Conclusions of Law
## Standing and Relation-Back Issues

Florida Rule of Civil Procedure 1.190(c) states "When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading." In Florida, the relation-back rule is liberally construed. *See Schwartz by & Through Schwartz v. Wilt Chamberlain's, Ltd.,* 725 So. 2d 451, 453 (Fla. 4th DCA 1999). Further, "[t]he addition of a party ... does relate back where the new and former parties have an identity of interest which does not prejudice the opponent." *Id.* at 1291 citing *Kozich v. Shahady,* 702 So. 2d 1289 (Fla. 4th DCA 1997).

Plaintiff asserts that its claims are subject to Florida's relation-back doctrine and relate back to the date when the original plaintiff filed her Class Action Complaint. Plaintiffs assert that they are bringing the same claims as Ms. Cibula based on the same allegedly illegal conduct by Defendant. Plaintiffs claim that they and Ms. Cibula have an identity of interest where Ms. Cibula brought class action claims that purported to include the Plaintiffs in her original Class Action Complaint. Further, Plaintiffs argue that Defendant has defended these same class claims for several years suggesting that there is no prejudice by the addition of Plaintiffs as parties in the Second Amended Complaint.

The statute of limitations for Claim I is two years, Claim II is four years and Claim III is five years. *See* Fla. Stat. § 559.77(4); Fla. Stat. § 95.11(3)(f); Fla. Stat. § 95.11(2)(b). Plaintiffs seek certification of three classes for their claims with the following class periods: (i) September 28, 2013 to the date of this Order (Claim I); (ii) September 28, 2011 to the date of this Order (Claim II); and (iii) September 28, 2010 to the date of this Order (Claim III).

Page 3 of 18

A threshold inquiry as to whether this Court should grant class certification is whether the named plaintiff has standing to represent the putative class. *Stone v. Compuserve Interactive Servs.*, 804 So. 2d 383, 388 (Fla. 4th DCA 1001).One example of a disqualifier exists if the statute of limitations bars the proposed class representative's claims. "If the statute of limitations bars the representative plaintiffs' claims, they lack standing, cannot be a class member, and the class cannot be certified." *City of Ft. Pierce v. Australian Props., LLC,* 179 So. 3d 426, 431 (Fla. 4th DCA 215).

Seterus argues that Plaintiffs lack standing to prosecute the FCCPA claim on behalf of the class, as the FCCPA's two-year statute of limitation bars their individual claims. Resp. at 8-9; *see* Fla. Stat. § 559.77(4). Seterus claims that it stopped collecting Speedpay Fees from Florida borrowers on February 20, 2016. Plaintiffs did not join this action until August 2018, more than six months after the statute of limitations necessarily expired. Resp. at 8-9.

In response to this, Plaintiffs point to Florida Rule of Civil Procedure 1.190(c) ("Rule 1.190(c)"), which provides:

> When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading

Fla. R. Civ. P. 1.190(c). Plaintiffs contend that their claims relate back to the filing of the original class action complaint under Rule 1.190(c), as they base their FCCPA claims on the same conduct as Cibula's — Seterus' allegedly unlawful collection of the Speedpay Fee. Reply at 3.

In *Palm Beach School Bd. v. Doe,* 210 So.3d 41 (Fla. 2017), the Florida Supreme Court stated:

> As established in *Fabbiano, Dailey*, and even *Caduceus,* amendments asserting new claims <u>can</u> relate back to the original pleading as long as they arise out of the same conduct, transaction, or occurrence as the claims within the original. The proper focus of the inquiry is not whether the amended pleading sets forth a new or different claim, but whether the claims within the amended pleading are part of

Page 4 of 18

the same conduct, transaction, or occurrence as in the original pleading. (Emphasis in the original)

The claims here allege the same conduct as the original pleading, to wit, improper Pay-to-Pay fees.

However, while Rule 1.190(c) allows the addition of new claims or defenses, it does not necessarily authorize the addition of new parties. *Schwartz by & Through Schwartz v. Wilt Chamberlain's, Ltd.,* 725 So. 2d 451, 453 (Fla. 4th DCA 1999). Thus, as Seterus correctly notes, the general rule is that the "the addition of a new party to an action will not relate back to the original complaint." *Id.* (citing *Kozich v. Shahady,* 702 So. 2d 1289 (Fla. 4th DCA 1997); *see also Troso v. Florida Ins. Guar. Ass'n,* 538 So. 2d 103 (Fla. 4th DCA 1989) (same).

Florida law does however provide a limited exception to this rule where the "new and former parties have an identity of interests so as not to prejudice the adverse party by the addition." *Ron's Quality Towing v. Se. Bank of State,* 765 So. 2d 134, 136 (Fla. 1st DCA 2000) (collecting cases); see Resp. at 9, Reply at 4. The parties disagree, however, as to whether Plaintiffs can successfully invoke this narrow exception.

Relying on cases such as *Smith v. Bruster* and *Ron's Quality Towing,* Seterus argues that this "identity of interest" exception only applies where the new and original parties share an "overlapping ownership interest" in the subject of the dispute. Resp. at 9.

Seterus maintains that Plaintiffs have no shared ownership interests in the subject matter of Cibula's claim— i.e. the actual and statutory damages she may recover based on her payment of the Speedpay Fees. Reply at 9. That is, Plaintiffs have no claim to any damages Cibula may recover on her settled individual claim. And, because this Court deemed Cibula inadequate to represent the putative class, Seterus contends that she has no ownership interest in Plaintiffs' or any other class members' potential recovery based on their payment of the Speedpay Fees. *Id.*

Plaintiffs contend that they have an identity of interest with Cibula because "they were all part of the same class, based on the same conduct that formed the basis for Ms. Cibula's original class action suit." Reply at 4. The Court rejects Seterus's assertion on this point. In the cases cited by Seterus addressing an identity of interest, all concern Defendants brought into existing lawsuits after the cases progressed without their participation thereby prejudicing their interests.

Page 5 of 18

Moreover, most were addressing corporations with individuals within the entity that shared a common interest and knowledge. In this case, the new parties are Plaintiff class representatives. The only prejudice Seterus alleges relates to the change from credit to debit transactions which allegation concerns the means for payment of the Pay-to-Pay fees but not their existence or legality.

Separating the wheat from the chaff, the real issue raised here by Seterus is that the original complaint and first amended complaint ("FAC") set forth class definitions consisting of those consumers who paid the allegedly improper fees <u>by</u> credit card payments. But as Seterus explained in its Response to Cibula's motion for class certification ("Prior Resp."), Seterus has never accepted credit card payments from any of its customers ( Prior Resp. at 5, 16), a fact Seterus obviously knew from the outset. Plaintiffs acknowledged the mistake and amended the complaint. The amendment changes the proposed certification classes from credit cards to debit cards. Defendant asserts that this change is material and dispositive.

In keeping with the Florida Supreme Court's decision in *Palm Beach School Bd. v. Doe* and the instruction to be liberal in applying relation back as well as class certification where appropriate, this Court, after careful consideration, concludes that relation back is appropriate because the claims herein are of the same "conduct" although via a different pay mechanism. *See, TIG Ins. Corp. of America v. Johnson*, 799 So.2d 339, 342 (Fla. 4th DCA 2001) and *Savage v. Rowell Distribution Corp.*, 95 So.2d 415 (Fla. 1957). The inappropriate conduct at issue is not the mechanism for payment (i.e., the use of a credit versus debit card), it is the unauthorized Pay-to-Pay charges. That alleged misconduct has not changed since the initial pleading. The alleged damages are for the improper charges not for the use of credit or debit card. Moreover, Seterus is not prejudiced as they have known this fact from the outset and were aware of the potential class members.

Despite the Court's best efforts, there does not appear to be Florida case law directly addressing this issue. In the absence of such, this Court may properly look to the federal cases to address the problems posed by purported class members who now (after the statute of limitations may have expired) seek to represent the class in this instance. The rule of *American Pipe v. Utah* recognized that the filing of a class action complaint notifies the defendant "not only of the substantive claims being brought against [him], but also of the number and generic identities of

Page **6** of **18**

the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendant[ ] [has] the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors." *American Pipe & Construction Co. v. Utah,* 94 S. Ct. 756, 767 (1974)[1] Therefore, here, as was the case with *American Pipe,* there is no unfair prejudice to defendant in tolling the statute of limitations.

In sum, the Court concludes that Plaintiffs' claims relate back to the filing of Cibula's original complaint, and are not barred by the applicable statute of limitations. As a result, the Court finds that Plaintiffs have standing and that they can adequately represent the class with respect to the claims in this action.

## Standards for Class Certification

Plaintiffs state that that there are three key documents that prove both their claims and the claims of the proposed class: (1) the Mortgage Agreement, which is uniform as to the class; (2) the contract between Defendant and Western Union, the vendor hired to process the Pay-to-Pay transactions; and (3) the spreadsheet of Pay-to-Pay fees charged to class members.

Florida Rule of Civil Procedure 1.220(a) provides that the movant for class certification must establish the following four prerequisites, which are:

> (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each

---

[1] The case cited by Defendant, *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018), is not applicable here because unlike the plaintiffs in that case, Plaintiffs do not seek to "piggyback" and institute a new class action. Rather, Plaintiffs have joined the existing action started by Ms. Cibula, which is consistent with the holding in *China Agritech.* ("The question presented in this case is whether *American Pipe* tolling applies not only to individual claims but to <u>successive</u> class actions as well." *Id.* at 1801.)

member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

Fla. R. Civ. P. 1.220(a). These threshold requirements are often referred to as "the numerosity, commonality, typicality, and adequacy of representation elements of class certification." *Marco Island Civic Ass'n v. Mazzini*, 805 So.2d 928, 930 (Fla. 2d DCA 2001).

In addition to satisfying Rule 1.220(a), a plaintiff also must satisfy one of the three subdivisions of Rule 1.220(b). Rule 1.220(b)(3), often applicable in actions predominantly seeking damages, requires that common questions of law or fact predominate over any individual questions of class members, and the class action must be superior to other available methods for a fair and efficient adjudication of the controversy. *Rollins, Inc. v. Butland*, 951 So.2d 860, 868 (Fla. 2d DCA 2006).

"A trial court should resolve doubts with regard to certification in favor of certification, especially in the early stages of litigation." *Sosa v. Safeway Premium Fin. Co.*, 73 So.3d 91, 105 (Fla. 2011), citing *Chase Manhattan Mortg. Corp. v. Porcher*, 898 So.2d 153, 156 (Fla. 4th DCA 2005). Although a trial court will generally be required to conduct an evidentiary hearing to determine whether to certify a class, the trial court's proper focus is on whether the requirements of Rule 1.220 have been met and not on whether the moving party will prevail on the merits. *See Samples v. Hernando Taxpayers Ass'n*, 682 So.2d 184, 185 (Fla. 5th DCA 1996) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

### Rule 1.220(a) Requirements

Numerosity is met in this action because spreadsheets produced in discovery as well as confirming testimony from Defendant establish a potential that there were 35,266 Florida borrowers' loans who were assessed Pay-to-Pay fees by Defendant. "No specific number and no precise count are needed to sustain the numerosity requirement." *Sosa v. Safeway Premium Fin. Co.*, 73 So.3d 91, 114 (Fla. 2011), citing *Toledo v. Hillsborough Cnty. Hosp. Auth.*, 747 So.2d 958, 961 (Fla. 2d DCA 1999).

Florida courts hold that commonality determinations are primarily concerned with two factors: (1) whether the representative plaintiffs' claims arises from the same course of conduct that gives rise to the other class member claims, and (2) whether the claims are based on the

same legal theory. *Sosa*, 73 So. 3d at 107; *Smith v. Glen Cove Apartments Condominiums Master Ass'n Inc.*, 847 So. 2d 1107, 1110 (Fla. 4th DCA 2003). Commonality is satisfied because Plaintiffs' claims arise from the same course of conduct as those of the class: Defendant's imposition of the Pay-to-Pay fees. The legal theories and defenses, which will focus on whether this conduct violated the FCCPA and FDUTPA and breached the uniform mortgage agreement, are common as to the class. And both of the seminal documents that will be used to prove the claims – the uniform covenants in the Mortgage Agreement and contract between Defendant and Western Union – are common as to the class.

Specifically, there are numerous common questions of law and fact, including: (1) whether the charging of pay-to-pay fees violated the uniform Mortgage Agreement; (2) the cost to Defendant under its contracts with Western Union for processing pay-to-pay fees; (3) whether Defendant is allowed to keep any amount collected in excess of the cost to Defendant for processing pay-to-pay fees; (4) whether Defendant violated the uniform Mortgage Agreement by not applying any amount in excess of the cost of processing pay-to-pay to amounts due; (5) whether Defendant violated the FCCPA by charging pay-to-pay fees; (6) whether Defendant violated the FDUTPA by charging pay-to-pay fees; (7) whether Plaintiffs and class members are entitled to actual and/or statutory damages as a result of Defendant's actions; and (8) whether Plaintiffs and the class are entitled to attorney's fees and costs. The commonality requirement is therefore met.

Typicality is similar to the requirement of commonality. "The court's primary concern in considering the typicality of claims should be whether the representative's claim arises from the same practice or course of conduct that gave rise to the claims and whether the claims are based on the same legal theory." *Powell v. River Ranch Prop. Owners Ass'n, Inc.*, 522 So.2d 69 (Fla. 2d DCA 1988). Plaintiffs' claims regarding pay-to-pay fees are typical of those of the class because their claims "aris[e] from the same practice or course of conduct that gave rise to the claims" and their "claims are based on the same legal theory" as those of the class. *Powell, supra.*

The Court has considered Defendant's argument that Plaintiffs' FCCPA claims are not typical of the class because their FCCPA claims are barred by the statute of limitations. The argument fails for the reasons above.

The Court has also considered Defendant's argument that all class members must provide notice and opportunity to cure. The Court rejects this argument for several reasons. First, the notice and cure provision states that no borrower may "commence, join, or be joined in any judicial action..." It is well settled that absent class members are not "parties" to a class action and are not acting to "commence, join or be joined" this action. *See Alappatah Serv., Inc. v. Exxon Corp.,* 333 F.3d 1248, 1259, n.14 (11th Cir. 2003) (absent class members are not parties, opposing or litigating adversaries for purposes of Fed. R. Civ. P. 13.); *Williams v. General Elec. Capital Auto Lease, Inc.,* 159 F.3d 266, 269 (7th Cir. 1998) ("Generally speaking, absent class members are not 'parties' before the court... the representative plaintiff is the party before the court.")

Second, when class representatives give pre-suit notice and demand, this exercise satisfied the requirement for all class members. *See, e.g., Chandler v. Crosby,* 379 F.3d 1278 (11th Cir. 2004). Here, it appears undisputed that Plaintiffs gave Defendant notice through their pre-suit demand letters on behalf of all class members and that Defendant had been on notice of Plaintiffs' claims for years, as this suit was initially filed in September 2015.

Under Rule 1.220(a), adequacy requires two elements. First, counsel for the class must be qualified, experienced, and generally able to conduct the litigation. Second, the court must be satisfied that the named plaintiffs are adequate class representatives. *Sosa, supra,* at 115, citing *City of Tampa v. Addison,* 979 So. 2d. 246, 255 (Fla. 2d DCA 2007). The adequacy of representation requirement is met if the named representatives have interests in common with the proposed class members; at this juncture there are no material conflicts of interest between the named representatives and the class, and the representatives and their qualified attorneys will properly prosecute the action. *Olen Properties Corp. v. Moss,* 981 So.2d 515, 520 (Fla. DCA 4th 2008).

The Court has reviewed Mr. Kauffman's Declaration, which states that Mr. Kauffman has concentrated his law practice in class actions and consumer finance matters since 2003. Kauffman Decl. ¶3. Mr. Kauffman has served as class counsel in several class actions in Florida state and federal courts, and others in federal courts outside of Florida. *Id.* Mr. Kauffman has provided the Court with his firm's summary resume, where the firm's attorneys have served in leadership positions in high profile complex consumer cases including the Volkswagen "Clean

Diesel" Marketing, Sales Practices, and Product Liability Litigation, MDL No. 2672 CRB (JSC) (N.D. Cal.) and *Krakauer v. Dish Network, LLC,* No. 1:14-cv-00333-cce-fep (M.D. N.C.). *Id.,* Ex. 2. Mr. Kauffman states that he has argued every motion at hearing before the Court in this action, has been engaged in all discussions with opposing counsel, and is the primary attorney appearing before the Court. Id. ¶5. Should the Plaintiffs' motion be granted, Mr. Kauffman states that he will act as lead trial counsel and should there be any settlement discussions, he will act as lead counsel and solely advise Plaintiffs on any settlement discussions. Id. ¶6.

The Court finds that Plaintiffs have demonstrated their commitment to prosecuting this action. They have each responded to written discovery and submitted themselves to depositions. Plaintiffs also appeared for a full day mediation. In addition, Plaintiffs have no personal or otherwise potentially conflicting relationship with class counsel. Plaintiffs have no familial or other relationship to class counsel, or its employees. There is no conflict of interest with any of the Plaintiffs and the class members.

Plaintiffs' claims are identical to those of the class, whose members were also assessed Pay-to-pay fees by Defendant. Plaintiffs' loan numbers appear along with the rest of the class members' loan numbers on the class identifying spreadsheet that shows the pay-to-pay charges collected by Defendant. The Court is satisfied that Plaintiffs have no conflicts and will adequately represent the interests of the class.

### Rule 1.220(b)(3) Requirements

The predominance inquiry is met if "the defendant acts toward the class members in a similar or common way." Sosa, 73 So.3d at 111. A "class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class wide impact. A class representative accomplishes this if he or she, by proving his or her own individual case, necessarily proves the cases of the other class members." *Id.,* citing *InPhyNet Contr. Servs. v. Soria,* 33 So.3d 766, 771 (Fla. 4th DCA 2010). The predominance inquiry is met here because individual issues do not predominate over common ones. And because the case will be resolved using common proof and a common methodology of computing damages, the class representatives have "demonstrate[d] a reasonable methodology for generalized proof of class-wide impact." *Sosa,* 73 So.3d at 111.

Page 11 of 18

The Court finds that individual issues do not predominate over common issues with respect to Plaintiffs' breach of contract claim. Defendant argues that some class members do not have material damages because they may have avoided late charges under the contract by paying electronically where late charges exceed the Pay-to-Pay fees. However, Plaintiffs have offered evidence that shows Defendant charges Pay-to-Pay fees regardless of the timing of the payment. Even where a payment is made late by phone or internet, Defendant collects both a late fee and Pay-to-Pay fee. On the other hand, Defendant has not offered any evidence to demonstrate that any class member was charged a Pay-to-pay fee instead of a late fee.

The Eleventh Circuit has made clear that individual issues relating to damages do not defeat class certification. *See Allapattah*, 333 F.3d at 1261; *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010). Other affirmative defenses such as mitigation and setoff pertain to damages, and likewise do not defeat certification. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 651 (S.D. Fla. 2015); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 677 (S.D. Fla. 2011) ("Union Bank") (setoff defense does not destroy predominance). Defendant's arguments with respect to materiality are essentially the affirmative defense of set-off, which does not defeat predominance. Further, Defendant's argument is based on the same contractual provisions that apply equally to all class members; these issues go to the merits of the claim and not to whether the claim may be resolved on a class-wide basis.

Ultimately the fact that the contract is uniform as to the class indicates that certification is appropriate. *See* Newberg on Class Actions § 3:37 (5th ed.) ("In class actions based on contractual provisions, the proposed class representative's claims are generally held to be typical of the class members' claims where all arise out of the same general contract"); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (stating that "[b]reach of contract claims are certifiable as appropriate for class action" and finding common issues predominated "over the issues – primarily those related to damages – that require individual proof"); *In re Universal Service Fund Tel. Billing Prac. Litig.*, 219 F.R.D. 661, 667 (D. Kan. 2004) (finding commonality satisfied for class alleging breach of general terms and conditions in business service guide).

As to the predominance inquiry on Plaintiffs' other claims, courts have recognized the propriety of certifying classes under the FCCPA and FDUTPA when the allegations apply

Page 12 of 18

equally to all class members. *See Sharf v. Fin. Asset Resolution, LLC,* 295 F.R.D. 664, 671 (S.D. Fla. 2014) ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate); *Law Offices of David J. Stern, P.A. v. Banner,* 50 So. 3d 1221, 1222 (Fla. 4th DCA 2010) (affirming certification ruling that found defendants "acted similarly toward each class member, and [plaintiff] and the class all seek recovery under the FCCPA and FDUTPA. Further, both the factual and legal issues arising under FCCPA and FDUTPA are essentially identical as to each member of the class and are susceptible to proof on a class wide basis").

Defendant contends that individualized issues arise because the FCCPA requires a plaintiff's claim to arise from "debt," which is defined as "any obligation or alleged obligation ... arising out of a transaction. . . primarily for personal, family, or household purposes." Fla. Stat. § 559.55(6). The determination of whether a debt qualifies as a consumer debt is properly focused at the time when the loan was made, not when it was collected. *Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068–69 (9th Cir.1992); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872, 874 (7th Cir. 2000). Here, the class members all have residential loans on homes located in Florida.

For these reasons, courts confronting this issue in the analogous FDCPA context have rejected the argument, reasoning that, "The need to show that the transactions involved ... are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under FDCPA." *Wilborn v. Dun & Bradstreet Corp.,* 180 F.R.D. 347, 357 (N.D. Ill. 1998) (certifying class alleging collector's form collection letter violated the FDCPA). *See also Talbott v. GC Servs. Ltd. P'ship,* 191 F.R.D. 99, 106 (W.D. Va. 2000) (certifying class of persons mailed dunning letter and rejecting the argument that determination of the status of the debt as consumer debt predominated over common issues); *Borcherding-Dittloff v. Transworld Sys., Inc.,* 185 F.R.D. 558, 563 (W.D. Wisc. 1999) (noting the "determination may require only a simple check whether the debtor is an individual or business").

Defendant also argues that some class members may have resided in other states when he or she paid the Pay-to-Pay fees to Defendant, and that the FCCPA only applies to Florida residents, relying solely on *Bank of America, N.A. v. Zaskey,* 2016 WL 2897410, (S.D. Fla. May

18, 2016). However, the Court in *Zaskey* rejected the same argument and held that there was no legal authority to support the assertion that the FCCPA only applied to residents. *Zaskey*, 2016 WL 2897410, at *11 (finding that FDUTPA applies to out of state residents and that there was no authority that the FCCPA did not also apply to out of state residents). Further, the Mortgage Agreement's uniform covenant at paragraph 16 defines the governing law of the contract as federal law and the law of the state where the property is located. All class members' loans are for properties located in Florida, therefore Florida law governs all class members' statutory consumer law claims. *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 536 (C.D. Cal. 2013) (finding that Plaintiffs' claims under state consumer protection statutes related to mortgage servicing fees paid and services performed under a mortgage agreement fell within the choice-of-law provision contained within that mortgage agreement); *Estrella v. Freedom Fin. Network, LLC*, No. C 09–03156 SI, 2010 WL 2231790, at *4 (N.D. Cal. June 2, 2010) (same).

Defendant further argues that Plaintiffs cannot prove Defendant had actual knowledge of the fees' impropriety on a class-wide basis. Actual knowledge can be proven through proof that applies equally to the Plaintiffs and the class. First, Defendant takes on the servicing rights subject to an assignment of rights under the terms of the mortgage agreement and is charged with knowing the terms of the uniform covenants in the Mortgage Agreements to enforce its servicing rights against Florida borrowers. More importantly, Seterus is an alleged party to the Loan Modification Agreements, thereby establishing contractual privity and a commitment contractually to conduct itself in accord with the loan documents. Also, Plaintiffs may employ common evidence to demonstrate that Defendant knew that the Mortgage Agreement did not expressly allow it to collect Pay-to-Pay fees, and that Defendant nevertheless engaged in a contract with Western Union (and its predecessors) that provided a cost per transaction much less than the amount that Defendant chose to charge the class. Plaintiffs can show actual knowledge by evidence that the Defendant created a profit center through its practices. Plaintiffs can also use common, class-wide evidence of Defendant's repeated employment of its own practices to knowingly assess the challenged fees. Additionally, Plaintiffs may show that Defendant instituted policies and practices uniform to all class members to collect Pay-to-Pay fees, but chose not to instruct its call center or customer service employees of the actual cost of the Pay-to-Pay transactions. Plaintiffs may show that Defendant's own policies and practices resulted in over 800,000 Pay-to-Pay fees that were not collected by accident. Indeed, Defendant states that

Page 14 of 18

it halted the practice of collecting Pay-to-Pay fees about five months after Plaintiff Cibula initiated her lawsuit, which may be further evidence common to the class that Defendant knew of the fees' impropriety.

Also, the Court has considered Defendant's argument that the "deceptive act" requirement of FDUTPA precludes class certification and is unpersuaded. The deceptive acts alleged in the Second Amended Complaint are that Defendant "asserted a known non-existent legal right to a debt" when it assessed fees it was not permitted, under law, to assess and that Defendant "never informed Representative Plaintiffs when each made his or her payment that the actual cost to Defendant was far less than the amount charged to Representative Plaintiffs." See SAC ¶¶ 87, 88. There is no evidence in the record to suggest otherwise that any class member was ever made aware that the fees were in fact illegal. This distinguishes this case from those cited by Defendant where there was evidence put forth that a charge or practice was not in fact hidden, and that an inquiry into whether class members had received particular information would be necessary. *See, e.g., Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.R.D. 677, 686 (2008) (defendant argued that the property tax invoices alleged to be deceptive in fact contained an explanatory table on the back of the invoice defining the property tax; court found that determining whether invoice was deceptive would require inquiry into whether a plaintiff read and understood the invoice); *Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729, 737 (S.D. Fla. 2007) (defendant asserted that its standard policy was to inform all customers of the pricing structure that plaintiff challenged; court worried that "[i]n order to determine whether a particular conversation did or did not occur, the fact finder would have to look at the individual circumstances of each class member"); *Cohen v. Implant Innovations, Inc.,* 259 F.R.D. 617 (S.D. Fla. 2008) (defendant did not provide customers with a uniform set of marketing materials, therefore "[w]hether each putative class member received or was exposed to the defendant's marketing materials is an individualized question of fact in the instant case.")

Here, Plaintiff alleges that the deceptive nature of Defendant's conduct was uniform as to all class members, and that no individual issues predominate over the common inquiry.

Defendant argues that its affirmative defenses of consent, ratification, waiver, voluntary payment or mitigation create individualized issues that predominate. However, these affirmative defenses require a party to have full knowledge of the circumstances in order for the defense to

Page 15 of 18

prevail, including ratification, waiver, voluntary payment, and failure to mitigate. *In re Checking Account Overdraft Litigation,* 307 F.R.D. 630, 651 (S.D. Fla. 2015) ("Wells Fargo"). Here, like the Wells Fargo case, plaintiffs may overcome affirmative defenses by offering evidence to show that a defendant "promulgated misinformation and concealed material aspects of its scheme from its customers." *Id.*

In the end, the Court finds *Sosa* to be most instructive in this action and determines that the common question before the Court is whether Defendant may charge more than the cost for processing electronic mortgage payments. A very similar type of "service charge fee" was at issue in *Sosa,* and the Supreme Court of Florida held that it was "presented with a classic case for a class action" in its analysis of predominance under Rule 1.220(b)(3). *Sosa,* 73 So.3d at 111. Also, "[t]he methodology employed by a trial court in determining whether class claims predominate over individual claims involves a proof-based inquiry." *Id.* More specifically, a class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class-wide impact." *Id.* Here, Plaintiff has shown that her claim is susceptible to common proof: the Mortgage Agreement, the contract between Defendant and Western Union, and the spreadsheet of pay-to-pay charges collected by Defendant. On the other hand, Defendant has offered no proof of individualized issues, therefore the predominance inquiry weighs heavily in Plaintiff's favor.

The Court concludes that a class action is the superior way of fairly and efficiently adjudicating this controversy. Without the class action mechanism, the alternative here is likely the lack of any relief for affected Florida consumers, a disfavored result. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338 (1980). The vast majority of those who were assessed the alleged illegal fees would likely not seek relief on an individual basis because, first, they would have no way of knowing that a claim existed, and second, even were they somehow to discover that they had a claim, the cost of proceeding on an individual basis would not be practical or economical given the potential size of individual awards. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 753 (2012) (noting the unlikely possibility that a consumer would pay the $350 federal court filing fee to bring a $500 claim); 7A *Wright, Miller & Kane, Federal Practice and Procedure* (2d ed. 1986), at 518, § 177 (a class action enables those who have small claims that might not be worth litigating individually to combine their resources and vindicate their rights collectively).

## Class Certification Is Warranted

Having made these requisite findings, the Court GRANTS Plaintiffs' Motion and certifies the following three classes under Florida Rule of Civil Procedure 1.220(a) and (b)(3):

(1)     For Plaintiffs' FCCPA claim (Count I):

All persons with a Florida address to whom Seterus and its agents charged, collected, or attempted to collect fees for the use of debit card or debit automatic clearing house ("ACH") mortgage payments from September 28, 2013 through the date of this Order.

(2)     For Plaintiffs' FDUTPA claim (Count II):

All persons with a Florida address to whom Seterus and its agents charged, collected, or attempted to collect fees for the use of debit card or debit automatic clearing house ("ACH") mortgage payments from September 28, 2011 through the date of this Order.

(3)     For Plaintiffs' breach of contract claim (Count III):

All persons with a Florida address to whom Seterus and its agents charged, collected, or attempted to collect fees for the use of debit card or debit automatic clearing house ("ACH") mortgage payments from September 28, 2010 through the date of this Order.

Excluded from the above classes are the Defendant, its parent, subsidiaries affiliates, officers and directors; any Judge to who this action is assigned; and any member of such Judge's staff or immediate family.

In addition, the Court appoints Plaintiffs James Montesi, Belkis Velazquez and Nestor Mato as adequate class representatives. The Court appoints James Kauffman and the law firm of Bailey & Glasser, LLP as class counsel, and finds that they possess the requisite experience and competence as counsel who are willing and able to prosecute the claims of the class.

DONE AND ORDERED in West Palm Beach, Palm Beach County, Florida, this 27 day of March, 2019.

G. JOSEPH CURLEY, JR.
Circuit Judge

**Copies furnished via Judicial e-service to:**
HECTOR E LORA, P.O. BOX 9057, FT LAUDERDALE, FL 33310-9057;
hlora@mauricewutscher.com
J DENNIS CARD, 721 US HIGHWAY 1, STE. 201, NORTH PALM BEACH, FL 33408;
DENNIS@CLOORG.COM; darren@cloorg.com
ERNEST P WAGNER; ewagner@childresslawyers.com; litigation@mwbllp.com

Page 17 of 18

JAMES L KAUFFMAN, 1055 THOMAS JEFFERSON STREET NW, SUITE 540, WASHINGTON, DC 20007; JKAUFFMAN@BAILEYGLASSER.COM mkestnerclay@baileyglasser.com tpulliam@baileyglasser.com

CHRISTOPHER P HAHN, 333 SE 2ND AVENUE, SUITE 2000 MAURICE WUTSCHER LLP, MIAMI, FL 33131; chahn@MauriceWutscher.com; litigation@MauriceWutscher.com

SANDRA HENSON KINNEY, 209 CAPITOL STREET, CHARLESTON, WV 25301; SKINNEY@BAILEYGLASSER.COM

MICKEY J LEE, 101 W OHIO ST, SUITE 2000, INDIANAPOLIS, IN 46204; MLEE@MAURICEWUTSCHER.COM

JONATHAN R MARSHALL, 209 CAPITOL STREET, CHARLESTON, WV 25301; JMARSHALL@BAILEYGLASSER.COM

# EXHIBIT 2

LOAN #: ████9774
MIN: 1008722-0000379942-5

# NOTE

July 25, 2017                    Indianapolis,                         Indiana
[Date]                              [City]                              [State]

905 19th Ave N, Texas City, TX 77590
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$66,500.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Royal United Mortgage LLC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **4.625 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**        day of each month beginning on  **September 1, 2017.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  **August 1, 2047,**                       I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  **7999 Knue Road, Suite 300**
**Indianapolis, IN 46250**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.  **$341.90.**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 1/01
Ellie Mae, Inc.                                    Page 1 of 3                              F3200NOT  0107
F3200NOT (CLS)
07/24/2017 03:18 PM PST



Shellpoint_Alvarez000509

CONFIDENTIAL

LOAN #: ████████9774

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.                                    Page 2 of 3

F3200NOT  0107
F3200NOT (CLS)
07/24/2017 03:18 PM PST



Shellpoint_Alvarez000510

CONFIDENTIAL

LOAN #: ████████9774

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
EUGENIO ALVAREZ

Lender: Royal United Mortgage LLC
NMLS ID: 13390
Loan Originator: Earl Sims
NMLS ID: 1344189

[Sign Original Only]

Initials: _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Ellie Mae, Inc.                                    Page 3 of 3                    F3200NOT  0107
                                                                                 F3200NOT (CLS)
                                                                                 07/24/2017 03:18 PM PST



Shellpoint_Alvarez000511

CONFIDENTIAL