IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EUGENIO ALVAREZ, Individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, <br><br> *Defendant.* | § § § § § § § § § § § § | Case No. 4:24-cv-3597 |

**DEFENDANT NEWREZ LLC D/B/A SHELLPOINT**
**MORTGAGE SERVICING'S REPLY IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56, respectfully submits this Reply in support of its Motion for Summary Judgment:

I.     **INTRODUCTION**

Plaintiff's Opposition to Defendant's Motion for Summary Judgment confirms, rather than refutes, the core undisputed facts entitling Defendant to judgment as a matter of law. Despite 25 pages of argument, Plaintiff does not, and cannot, dispute the central fact underlying this case: ACI Payments, Inc. ("ACI"), a third-party payment processor, independently charged and retained the entirety of the convenience fees at issue, and SLS received no portion of or pecuniary benefit from those fees. Rather than confront this dispositive fact, Plaintiff relies heavily on *Williams v. Lakeview Loan Servicing, LLC*, a

1

case that did ***not*** involve a third-party payment processor and therefore does not dictate the result in this case.

Plaintiff's arguments fail as a matter of law. First, Plaintiff contends that SLS "indirectly" collected the convenience fees within the meaning of the Texas Debt Collection Act ("TDCA") by entering into a contract with ACI regarding payment processing. Plaintiff's theory that a mortgage servicer "collects" any fee charged by any third-party vendor it contracts with would impose unlimited strict liability on every mortgage servicer that uses any third-party service provider, which cannot be the intended result of the TDCA. Second, Plaintiff attempts to characterize ACI as SLS's agent, but this characterization is unsupported by the evidentiary record. Third, Plaintiff attempts to paint a picture that indirectly collecting convenience fees is "by definition" unfair and unconscionable. Such an argument fails where SLS was not required to offer borrowers like Plaintiff the option to pay by phone and borrowers had multiple free alternatives that they were fully informed of before they agreed to pay the convenience fee.

As set forth below, Plaintiff's arguments cannot withstand scrutiny, and Defendant is entitled to summary judgment.

## II.   ARGUMENT

### A.   SLS Did Not "Collect or Attempt to Collect" the Convenience Fees Within the Meaning of the TDCA

#### 1.   The Undisputed Evidence Establishes that ACI, Not SLS, Collected and Retained the Fees

The threshold question under Section 392.303(a)(2) is whether SLS "collect[ed] or attempt[ed] to collect" the convenience fees charged to borrowers who voluntarily chose

2

to make their mortgage payment by phone[1] in lieu of the other multiple, free payment alternatives. The undisputed record answers that question definitively: it did not. The payment processing fees were charged by ACI, collected by ACI, and retained entirely by ACI. Dkt. 50, Exhibit B-6 (Shellpoint's Supplemental Resp. to Interrog. 1) at Appx. 623-623 ("SLS never charged borrowers any Pay-to-Pay Fees; instead, a third-party vendor, ACI Payments, Inc. ("ACI"),[2] charged borrowers one or more Pay-to-Pay Fees in connection with payments the borrowers made voluntarily over the phone in lieu of other methods for which there were no charges."); Dkt. 50, Exhibit B-2 at Appx. 569 p. 20:4-12 ("A: . . . SLS did not charge the customers or borrowers . . . a convenience fee. Q: . . . . And so ACI actually collected the fees and SLS did not; is that correct? A: That is correct.").  SLS received no portion of the fees and no pecuniary benefit in connection with ACI's collection of the fees. *Id.*; *see also* Dkt. 46, Exhibit A, ¶ 16 at Appx. 5 ("SLS did not receive, benefit from, or retain any of the fees Plaintiff made to ACI in exchange for processing his monthly mortgage payment by phone.").  Nor is there any evidence to the contrary.

The well-established pass-through defense forecloses Plaintiff's claims. *See Ketterman v. I.C. Sys., Inc.*, No. 4:18-CV-1136, 2019 U.S. Dist. LEXIS 135264 (E.D. Mo. Aug. 12, 2019); Dkt. 46 (Def.'s Br.) at 9-10 (collecting cases). Plaintiff dismisses these

---

[1] Shellpoint was not required to offer borrowers the ability to pay by phone. This was an additional service offered to the borrowers as an alternative method of payment. *See Wendt v. 24 Hour Fitness USA, Inc.,* 821 F.3d 547, 550 (5th Cir. 2016) (noting the plaintiffs were not injured because they received the exact service they paid for).
[2] ACI is the successor to Official Payments Corporation ("OPAY"), SLS's original third-party payment processor.

authorities as "older, out-of-state cases" that predate more recent caselaw, but the pass-through defense is not an artifact of outdated jurisprudence. These cases are directly applicable because every time the court applied the pass-through defense, it was under circumstances like this where there was an independent third-party payment processing company, as opposed to the situation in *Williams* where there was a servicer/subservicer relationship. *See, e.g., Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 293 (S.D. Ohio 1996), *aff'd*, 135 F.3d 389 (6th Cir. 1998) ("standard fee charged by the processor of the payment, *an independent entity*" (emphasis added)); *Lee v. Mann Accounts*, No. 96-3922, 1997 U.S. App. LEXIS 27922 at *2 (6th Cir. Oct. 6, 1997) ("Visa credit card service provider"); *Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 355 (E.D.N.Y. 2012) (defendant used third-party payment processor Internet Transaction Solutions); *Ketterman v. I.C. Sys.,* No. 4:18-cv-1136, 2019 U.S. Dist. LEXIS 135264 (E.D. Mo. Aug. 12, 2019) (third-party credit card processor PNS Partners, LLC).

The pass-through defense and the cases that apply to it also represent a logical application of the statutory text. Section 392.303(a)(2) prohibits "collecting or attempt to collect" a fee. If SLS did not collect the fee and did not receive any portion of it, then SLS did not engage in the prohibited conduct, regardless of whether other circuits have adopted broader interpretations of different statutes with different language. The CFPB's own 2022 Advisory Opinion, the guidance to mortgage servicers in place at the time of ACI's collection of the convenience fees, confirms this understanding. *See* Dkt. 50, Exhibit B-5 (CFPB Advisory Opinion dated July 5, 2022). Summary judgment should be granted in favor of Defendant.

### 2.  <u>Plaintiff's "Direct or Indirect" Collection Theory Fails</u>

Again relying primarily on *Williams v. Lakeview Loan Servicing, LLC*, No. 4:20-cv-01900, 2023 U.S. Dist. LEXIS 173250 (S.D. Tex. Aug. 14, 2023), Plaintiff argues that because SLS contracted with ACI, connected ACI's systems into SLS's payment infrastructure, and agreed to the fee amounts, SLS "indirectly" collected the convenience fees. This argument fails as *Williams* is factually distinguishable from the facts of this case.

*Williams* involved a subservicing arrangement in which a master servicer assigned loan servicing rights to another, creating a chain of delegated authority over the loan servicing, including but not limited to the collection function itself. *Id*. at *2. The court framed the relevant inquiry as "whether Lakeview participated indirectly in the collection of pay-to-pay fees by assigning **loan servicing rights** to LoanCare in the **subservicing agreement**." *Id*. at *10 (emphasis added). Under the subservicing arrangement, the subservicer acted as an extension of the servicer's own operations to service loans, including collections. *Id*. at *10-11. "Lakeview 'indirectly' collect[ed] a debt when LoanCare, as Lakeview's subservicer, collect[ed] payments on the mortgage, payments of funds to be placed in escrow, or, fees that are 'incident to' those payments." *Id.* at *11.

Here, by contrast, SLS contracted with ACI as a payment processor, not as a subservicer, and certainly not with any delegation of authority to manage the daily administration of a loan. ACI was not assigned servicing rights and did not exercise any of the core functions of a mortgage servicer or subservicer like sending monthly billing statements or placing funds in escrow. ACI's sole role was to provide payment processing technology limited to payments by phone that borrowers could voluntarily choose to use,

for a fee, as an alternative to the free payment methods already available to them. And while the CFPB's 2022 Advisory Opinion endorsed the third-party payment processor relationship as compliant with the FDCPA, it did not speak at all about the arrangement in *Williams*. Indeed, the *Williams* arrangement, premised on the delegation of servicing authority through a subservicing agreement, simply does not apply to the limited third-party vendor relationship of the type at issue here between SLS and ACI.[3]

### 3. Plaintiff's Characterization of ACI as Defendant's "Agent" is Unsupported

Plaintiff suggests in a footnote that the "undisputed evidence" shows ACI acted as Defendant's agent, relying on a single contractual reference to ACI as SLS's "authorized agent." Pl.'s Br. at 13, n. 9. This passing reference does not establish an agency relationship for purposes of TDCA liability, and Plaintiff's reliance on it is misplaced.

The contractual designation of ACI as an "authorized agent" in a single provision of a commercial agreement does not, without more, create the type of principal-agent relationship that would justify attributing ACI's independent fee collection to SLS. Texas

---

[3] Plaintiff also insists that the phrase "agency relationship" does not appear in *Williams* and therefore Defendant's characterization of the case is inaccurate. Pl.'s Br. at 13. Regardless of the label used, the underlying principle of *Williams* was the delegation of servicing functions from servicer to subservicer (including the collection of payments), a fact that is entirely absent here. The *Williams* court emphasized that the subservicer "charged and collected the pay-to-pay fees for its own benefit, ***but in connection with the collection of monthly mortgage payments as Lakeview's subservicer*.**" *Williams*, 2023 U.S. Dist. LEXIS 173250, at *10 (emphasis added). ACI, by contrast, was not SLS's subservicer and did not have any rights, duties, or responsibilities to the borrowers—ACI was an independent payment technology vendor with limited contractually-defined responsibilities whose systems happened to be linked to SLS's infrastructure for the convenience of borrowers who chose to voluntarily pay by phone.

law requires that an agency relationship involve the right of the principal to control the agent's actions. *See McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App. – Dallas 2010, no pet.) ("[T]he principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist.").

Here, the undisputed evidence shows that SLS does not control ACI. ACI is an independent entity with no common ownership or corporate relationship with SLS. Dkt. 46, Exhibit A, ¶ 11 at Appx. 4. Indeed, the contract between ACI and SLS specifies that the parties are "independent contractors." Dkts. 46, 51, Exhibit A-4 at Appx. 41. ACI independently charged and retained the convenience fees for its own account, passing the mortgage payments to SLS. In fact, that is why SLS did not have any convenience fee data in its possession, custody, and control in the first instance. And, Borrowers were informed, through both written and verbal disclosures, that the fee was charged by ACI, not by SLS.

*Alexander v. Account Discovery Sys., LLC*, Case No. 1:17-CV-04351-AT-WEJ, 2018 U.S. Dist. LEXIS 223167, at *12-15 (N.D. Ga. Nov. 1, 2018), *adopted by* 2018 U.S. Dist. LEXIS 223168 (N.D. Ga. Nov. 27, 2018), is instructive. There, the court rejected the same agency theory argument Plaintiff makes here. The court reasoned that the agreement between the defendant and third-party payment processor "clearly designate[d] their relationship as being independent contractors" so "that relationship must be presumed." *Id*. at 13.[4] The court concluded that based on the independent contractor relationship, the

---

[4] The Court in *Alexander* also noted the presence of the word "agent" in one paragraph of the contract was not proof that the third-party payment processor was the defendant's

defendant had no actual control over its third-party payment processor and granted the defendant's motion for summary judgment. *Id*. at *13-14, 18. The same is true here. The agreement between SLS and ACI clearly states that the parties are independent contractors, and the undisputed evidence establishes that SLS does not exercise control over ACI. Just as in *Alexander*, this Court should grant Defendant's motion for summary judgment.

B.     **There is Nothing Unfair or Unconscionable About Offering an Optional, Fully Disclosed Service**

Plaintiff contends that collecting unauthorized incidental fees is "by definition" unfair and unconscionable under Section 392.303(a)(2), and that the Texas Legislature "did not give courts discretion to determine otherwise." Pl.'s Br. at 20. But the undisputed record confirms that there was nothing unfair or unconscionable about the convenience fees at issue here.

The fees were fully disclosed to borrowers through multiple channels: on monthly mortgage statements, on SLS's website, and through mandatory verbal disclosures before each transaction. Dkt. 46, Exhibit A-6 (Mortgage Statements) at Appx. 94, 273, 275; Dkt. 46, Exhibit A-8 (SLS Payment Options Policy) at Appx. 547-548. Borrowers were informed of the fee amount before every payment and were required to affirmatively consent to the fee before ACI would process the transaction. Dkt. 46, Exhibit A-5 at Appx. 90; *see also* Dkt. 50, Exhibit B-3 (Deposition of Eugenio Alvarez) at Appx. 580 p. 54:17-22 ("Q: But you understand that [the fee] was disclosed to you. . . ? A: Yes. Q: You agree

---

agent, and that one word could not undermine the clear intent of the section stating the parties are independent contractors. *Alexander*, 2018 U.S. Dist. LEXIS 223167, at *14-15.

to that? A: Yes."). Borrowers had multiple free alternatives, including paying by check, paying online, or setting up automatic electronic payments, none of which carried any fee. Dkt. 46, Exhibit A-6 (Mortgage Statements) at Appx. 94, 273, 275.   And the fees themselves ($7.50 for an IVR payment and $12.50 for an agent-assisted payment) were reasonable flat fees well within industry standards, as established by Defendant's expert, Marcel Bryar, and consistent with Fannie Mae's Servicing Guide, which recognizes that "accepting a 'phone pay' payment" is a customary "special service" for "additional work . . . that the servicer performs at the borrower's request" for which it is appropriate to charge a fee. Dkt. 50, Exhibit B-4 (M. Bryar Report) at Appx. 609 ¶ 48; *see* Fannie Mae, Servicing Guide, § A2-3-05, Fees for Certain Servicing Activities (11/08/2017), available at https://servicingguide.fanniemae.com/svc/a2-3-05/fees-certain-servicing-activities (last visited Mar. 11, 2026).

SLS was not required to provide this optional service to borrowers, but rather did so as a way to provide an additional convenient option to its customers. Plaintiff himself took advantage of this option in order for his payments (which were almost always late) to post immediately rather than sending a check in the mail and waiting. SLS should not be penalized now for offering an entirely optional service that was beneficial to borrowers like Plaintiff, and for which Plaintiff received an independent benefit. This Court should grant Defendant's motion for summary judgment.

## III.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant NewRez LLC d/b/a Shellpoint

Mortgage Servicing respectfully requests that this Court enter an Order granting

Shellpoint's Motion for Summary Judgment.

Date: March 13, 2026                                 Respectfully submitted,

                                                    */s/ Justin Opitz*
                                                    **Justin Opitz**
                                                    SBN: 24051140, FBN: 608966
                                                    jopitz@mcguirewoods.com
                                                    **Addison Fontein**
                                                    SBN: 24109876, FBN: 3530304
                                                    afontein@mcguirewoods.com
                                                    **MCGUIREWOODS LLP**
                                                    2601 Olive Street, Suite 2100
                                                    Dallas, Texas 75201
                                                    Telephone: 214.932.6400

                                                    **Melissa O. Martinez** (*Pro Hac Vice*)
                                                    mmartinez@mcguirewoods.com
                                                    **MCGUIREWOODS LLP**
                                                    500 East Pratt Street, Suite 1000
                                                    Baltimore, MD 21202
                                                    Telephone: 410.659.4432

                                                    ***Attorneys for Defendant Newrez LLC
                                                    d/b/a Shellpoint Mortgage Servicing***

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, a copy of the foregoing was filed electronically with the Clerk of the Court using the electronic filing system. Notice of this filing has been forwarded to all counsel of record by operation of the Court's electronic filing system.

/s/ Justin Opitz
**Justin Opitz**

11