**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **EUGENIO ALVAREZ, individually and on behalf of all others similarly situated,** | § § § § | |
| *Plaintiff,* | § § | |
| | § | **Civil Action No. 4:24-cv-03597** |
| **v.** | § § | |
| **NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,** | § § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION, APPOINTMENT AS CLASS REPRESENTATIVE,
<u>AND APPOINTMENT AS CLASS COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF ISSUES ................................................................................. 1

II.  SUMMARY OF THE ARGUMENT ............................................................... 1

III.  ARGUMENT ................................................................................................. 2

A.  Common Issues Predominate ........................................................................ 2

    1.  The Court May Conclude That All Class Members' Mortgage Documents Include Similar Language Addressed to Fees ....................................................... 5

    2.  Absent Class Members' Incurrence of "Consumer Debt" is Not an Issue at the Class Certification Stage ............................................................................ 7

    3.  Shellpoint Proffers No Evidence that Any Class Members' Loans Were Modified in Any Relevant Fashion ...................................................................... 11

    4.  "Notice-and-Cure" Provisions in Class Members' Mortgage Documents Are Inapplicable and/or Irrelevant ......................................................................... 12

B.  Mr. Alvarez is an Adequate Plaintiff. ....................................................... 15

IV.  CONCLUSION ............................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. S.C. State Conf. of the NAACP*,
602 U.S. 1 (2024) ........................................................................................... 1, 5

*Alvarez v. Loancare LLC*,
2021 WL 184547 (S.D. Fla.) ................................................................................ 7

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ............................................................................. 18

*Boczek v. Pentagon Fed. Credit Union*,
2025 WL 3068570 (N.D. W. Va. Nov. 3, 2025)........................................... 13, 14

*Boosahda v. Providence Dane LLC*,
462 Fed. App'x 331 (4th Cir. 2012) ..................................................................... 8

*Booth v. Galveston Cty.*,
No. 3:18-cv-00104, Dkt. 213 ............................................................................. 18

*Borcherding-Dittloff v. Transworld Sys., Inc.*,
185 F.R.D. 558 (W.D. Wisc. 1999) ..................................................................... 8

*Custer v. Dovenmuehle Mortg., Inc.*,
2025 WL 3677281 (M.D.N.C. Dec. 18, 2025) ..................................................... 5

*Eatmon v. Palisades Collection LLC*,
2011 WL 147680 (E.D. Tex. Jan. 18, 2011)......................................................... 6

*Geary v. Green Tree Servicing, LLC*,
2017 WL 2608691 (S.D. Ohio June 16, 2017) ..................................................... 9

*Grady v. Ocwen Loan Servicing, LLC*,
2014 WL 231952 (N.D. Ill. Jan. 21, 2014) ....................................................... 12

*Guenther v BP Retirement Accumulation Plan*,
2021 WL 1216377 (S.D. Tex. Mar. 12, 2021)................................................... 17

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*,
698 F.3d 290 (6th Cir. 2012) ............................................................................... 8

*Hawthorne v. Rushmore Loan Mgmt. Servs.*,
2023 WL 6388928 (D.D.C. 2023) ................................................................................ 8

*Hillis v. Equifax Consumer Services, Inc.*,
237 F.R.D. 491 (N.D. Ga. 2006) .................................................................................. 19

*Lawrence v. First Fin. Inv. Fund V, LLC*,
336 F.R.D. 366 (D. Utah 2020) ..................................................................................... 9

*Lemp v. Seterus, Inc.*,
2022 WL 912960 (E.D. Cal. Mar. 9, 2022) ................................................................... 7

*McCormick v. 7-Eleven, Inc.*,
2009 WL 10704102 (N.D. Tex. Mar. 12, 2009) ............................................................ 9

*McShannock v. JP Morgan Chase Bank N.A.*,
354 F. Supp. 3d 1063 (N.D. Cal. 2018) ....................................................................... 14

*McWhorter v. Serv. Corp. Int'l*,
748 F. Supp. 3d 459 (S.D. Tex. 2024) .................................................................... 18, 19

*Medical Components, Inc. v. Osiris Med., Inc.*,
226 F. Supp. 3d 743 (W.D. Tex. 2016) ........................................................................ 14

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*,
214 F.3d 872 (7th Cir. 2000) ......................................................................................... 7

*Montesi v. Seterus, Inc.*,
Civ. A. No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach
Cnty. Mar. 27, 2019) ............................................................................................. 8, 9, 14

*Morandi v. Nationstar Mortgage, LLC*,
2021 WL 1398967 (C.D. Cal. Apr. 6, 2021) ............................................................ 7, 14

*Nicolaides v. Divine & Service, Ltd.*,
382 F. Supp. 3d 251 (E.D.N.Y. 2019) ........................................................................... 8

*Riviere v. Banner Chevrolet, Inc.*,
184 F.3d 457 (5th Cir. 1999) ....................................................................................... 11

*Robledo v. Yardi Sys., Inc.*,
741 F. Supp. 3d 617 (W.D. Tex. 2024) .......................................................................... 9

*Sanderson v. Whoop, Inc.*,
2025 WL 744036 (N.D. Cal. Mar. 7, 2025) ................................................................. 17

*Schmidt v. Wells Fargo Home Mortg.*,
2011 WL 1597658 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x 868
(4th Cir. 2012)...................................................................................................... 13

*Sheridan v. Ally Fin., Inc.*,
2025 WL 2055750 (S.D. W. Va. July 22, 2025) ......................................................... 6

*Shular v. LVNV Funding LLC*,
2016 WL 685177 (S.D. Tex. Feb. 18, 2016) .......................................................... 6, 11

*Slamon v. Carrizo (Marcellus) LLC*,
2020 WL 2525961 (M.D. Pa. May 18, 2020)............................................................ 14

*Talbott v. GC Servs. Ltd. P'ship*,
191 F.R.D. 99 (W.D. Va. 2000)................................................................................ 8

*Torliatt v. Ocwen Loan Servicing, LLC*,
570 F. Supp. 3d 781 (N.D. Cal. 2021) ...................................................................... 6

*Torres v. S.G.E. Mgmt., LLC*,
838 F.3d 629 (5th Cir. 2016) (en banc) ................................................................ 4, 12

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)............................................................................................... 3

*Wilborn v. Dun & Bradstreet Corp.*,
180 F.R.D. 347 (N.D. Ill. 1998).............................................................................. 8

*Williams v. Lakeview Loan Servicing, LLC*,
2022 WL 1216577 (S.D. Tex. Feb. 8, 2022) ...................................................*passim*

*Williams v. Lakeview Loan Servicing LLC*,
2022 WL 950875 (S.D. Tex. Mar. 30, 2022)............................................... 12, 13, 14

*Williams v. Lakeview Loan Servicing LLC*,
694 F. Supp. 3d 874 (S.D. Tex. 2023) .................................................................... 13

*Willis v. Portfolio Recovery Assocs., LLC*,
2019 WL 2565243 (W.D. Tex. Mar. 8, 2019) ........................................................... 8

*Wilson v. Johns-Manville Sales Corp.*,
810 F.2d 1358 (5th Cir. 1987) ............................................................................... 5

**Statute**

Fair Debt Collection Practices Act.................................................................... 7, 8, 9

## I.    STATEMENT OF ISSUES

1.    Do common issues predominate where, despite Plaintiff's request to do so, Defendant has proffered no documentary evidence tending to suggest otherwise, and Defendant has disregarded a series of cases in which courts have found predominance under circumstances substantially identical to those now before this Court?

**Answer:** Yes. A "venerable rule" provides "that a factfinder may draw an adverse inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024). Defendant's virtually exclusive reliance on non-class cases to address predominance issues is contrary to wide-ranging precedent granting class certification in cases similar to this one.

2.    Is Plaintiff Eugenio Alvarez adequate to serve as a class representative?

**Answer:** Yes. Defendant does not dispute that Mr. Alvarez understands his duties, or claim that he has a conflict of interest with any Class member. His participation and knowledge with respect to the case are more than sufficient to exceed the standards that prevail in this District.

## II.    SUMMARY OF THE ARGUMENT

Plaintiff attached his own mortgage agreements and several standard Texas form mortgage agreements to the initial submission in support of the pending Motion. *See* Dkt. 39-1, Exs. 2-3, 21-26. Defendant Newrez LLC d/b/a Shellpoint Mortgage ("Shellpoint") does not acknowledge those form agreements and relies on the broad conclusions of its expert Marcel Bryar for the premise that absent class members may have signed mortgage

documents with materially different provisions. But early in this litigation, Plaintiff requested that Shellpoint produce such documents, including any that expressly authorized the fees in question. It never did so, despite having ample incentives to do so. The Court may now presume that no such documents exist.

Plaintiff also relied on a string cite of instances in which courts across the nation have granted class certification under circumstances substantially the same as those now before this Court. Dkt. 39 at 7-8. Shellpoint does not even acknowledge, much less distinguish, those cases. The cases Shellpoint cites in this context are virtually all individual actions, in which predominance was not an issue. The "predominance" of substantive issues in those cases says nothing about their predominance in this case. This is especially true considering that Shellpoint has not identified a single class member with an agreement with different terms than Mr. Alvarez's mortgage agreements out of the 7,827 Texas borrower class members in the putative class.

Shellpoint's claim that Mr. Alvarez cannot adequately represent the class mischaracterizes what he is required to know, and disregards what he has done. Mr. Alvarez has acted as the class representative in a manner entirely consistent with standards that prevail in this District, and consistent with the best interests of the Class.

### III.    ARGUMENT

#### A. Common Issues Predominate

Plaintiff's initial memorandum identified several issues common to all Class Members:

2

- Did Defendant engage directly or indirectly in debt collection when receiving payments by telephone?

- Do the Class members' Uniform Mortgages expressly authorize pay-to-pay fees?

- Are the pay-to-pay fees authorized by any statute?

- Are the pay-to-pay fees incidental to the principal debt?

Dkt. 39, at 15. That memorandum also identified common evidence Plaintiff and Class Members may use to prove their claims, including Uniform Mortgages, Uniform transaction data, Shellpoint's internal documents and testimony of its corporate witnesses, and its contract with ACI. *Id.* at 16.

Shellpoint addresses none of those issues, and none of that evidence, with the exception of its expert's opinion about Uniform Mortgages not being uniform, an opinion entirely unsupported by any evidence on its own side. As the Supreme Court held in *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016), "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper." (*quoted in Williams v. Lakeview Loan Servicing, LLC*, 2022 WL 1216577 at *8 (S.D. Tex. Feb. 8, 2022) ("*Williams I*").

As to the Uniform Mortgages, Plaintiff submitted with the Motion eight documents that demonstrate the uniformity of the mortgages at issue, including Mr. Alvarez's relevant mortgage documents. *Id.* (citing Exs. 2-3, 21-26). Having anticipated early in the litigation that Shellpoint would later argue that a multiplicity of mortgage forms exist and that some could authorize pay-to-pay fees, Plaintiff issued a request for production seeking mortgage forms that differ from those attached to his Motion:

3

REQUEST FOR PRODUCTION NO. 19: Produce all SLS templates and/or sample forms of Borrowers' Mortgage Agreements (including but not limited to Fannie Mae/Freddie Mac, FHA, USDA, or VA loans) that You contend authorized SLS's collection of Pay-to-Pay Fees.

Ex. 31, at 15.[1] Shellpoint has never produced a single document responsive to that Request. Nor did its expert Marcel Bryar in the testimony Shellpoint cites in this context. Dkt. 52, at 9-10. In fact, immediately after the cherrypicked exchange Shellpoint highlights, Plaintiffs' counsel asked Mr. Bryar how many times he had seen a security instrument explicitly allowing a servicer to charge such fees. Mr. Bryar could not offer a single example, and instead only referred back to Mr. Alvarez's mortgage, which does *not* expressly authorize pay-to-pay fees. *See* Dkt. 52-1 at 127:5-128:6 (App'x 11-12).

That absence of contrary evidence is damning and conclusive as to the uniformity of Class Members' mortgages. "[S]uch sheer speculation . . . does not cause individual issues" to predominate. *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629, 644 (5th Cir. 2016) (en banc) (rejecting defendant's argument that unproven individual reliance issues defeated predominance, noting that "[o]ur inquiry looks to how the trial will proceed; trials are grounded in evidence, not extra-record attorney speculation"). In cases where individual issues defeat predominance, the defendant must supply *actual evidence* of the individual issues. *See id.* (distinguishing speculative arguments about individualized issues from a case in which the defendant "*introduced evidence*" of class members' individual insurance agreements and rates (emphasis in original)). Shellpoint has not done so.

---

[1] Exhibits cited herein refer to the exhibits attached to the Declaration of Katherine M. Aizpuru in Further Support of Plaintiff's Motion submitted herewith.

4

As the Supreme Court held in *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024), a "venerable rule" provides "that a factfinder may draw an adverse inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists." *See also Wilson v. Johns-Manville Sales Corp.*, 810 F.2d 1358, 1362-63 (5th Cir. 1987) (affirming district court's exclusion of expert who failed to produce evidence supporting his conclusion). That conclusion is dispositive as to all of the purported issues Shellpoint raises with respect to predominance.

### 1. The Court May Conclude That All Class Members' Mortgage Documents Include Similar Language Addressed to Fees

Shellpoint's failure to address the cases Mr. Alvarez cited in the initial brief is most telling with respect to its groundless claim that class members' mortgage documents might encompass a broad range of provisions regarding fees. The court in *Custer v. Dovenmuehle Mortg., Inc.*, 2025 WL 3677281 (M.D.N.C. Dec. 18, 2025), addressed and dispensed with the same argument:

> DMI contends that the class members have different loan agreements with different provisions, thus raising individual questions as to whether DMI is legally entitled to charge and collect the pay-to-pay fee at issue. But it identifies no loan agreement for any class member which might authorize such fees, and it offers only speculation to support this contention.

> Presumably, DMI has access to all the loan agreements. Yet all DMI's Senior Vice President says in his declaration under oath is that "an unknown number" of class members "may have had language in their loan agreements" different from the language in the plaintiff's loan agreement. Doc. 50-1 at ¶ 5; *see also id.* at ¶ 6 (similarly speculative assertion about class members who are not current DMI customers).

*Custer*, 2025 WL 3677281, at *6 & n.3.

5

The defendant in *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781 (N.D. Cal. 2021), *cited in* Dkt. 39, at 8, like Mr. Bryar here, also posited that hypothetical class members would be opposed to the relief plaintiff sought, based strictly on his "economic logic." The court properly rejected that premise:

> He did not speak to actual borrowers, nor did he survey them. There was no evidence of an actual conflict, as in the cases cited by the defendants … . Although data can be informative, in this instance it does not establish that class members actually oppose the relief that Torliatt seeks. It amounts to speculation, which is not enough to deny class certification.

*Torliatt*, 570 F. Supp. 3d at 796. *See also id.* at 799 (dismissing defendants' proffer of four mortgage documents allowing for fees where "the proposed class includes 'tens of thousands' of members"). *See also Williams I*, 2022 WL 1216577 at *5 n.5 (dismissing defendant's argument against predominance based on purported evidence they did not and could not produce); *Eatmon v. Palisades Collection LLC*, 2011 WL 147680, at *4 (E.D. Tex. Jan. 18, 2011) ("Defendant's lack of records of its own demand letters should not be a basis for precluding an action based on the allegedly illegal demand letters."), *cited in Williams I*, 2022 WL 1216577 at *5 n.6; *Sheridan v. Ally Fin., Inc.*, 2025 WL 2055750, at *5 n.1 (S.D. W. Va. July 22, 2025) ("Ally will have the opportunity during class administration to offer evidence showing that [absent] class member[s]" signed unconventional agreements).

The cases Shellpoint cites in this context are all distinguishable for a decisive reason: unlike Mr. Alvarez here, who has identified several uniform documents and expert testimony to support his assertion of uniformity, the plaintiffs in cases cited by Shellpoint did not make any threshold showing. The named plaintiff in *Shular v. LVNV Funding LLC*,

6

2016 WL 685177, at *10 (S.D. Tex. Feb. 18, 2016), presented no relevant evidence with his class certification motion, and did not even file a reply to defendant's opposition submission. The plaintiff in *Alvarez v. Loancare LLC*, 2021 WL 184547, at *15 n.16 (S.D. Fla.), "argue[d] *without evidence* that individualized inquiries into each mortgage's terms is unnecessary." (emphasis added); *Morandi v. Nationstar Mortgage, LLC*, 2021 WL 1398967, at *4 (C.D. Cal. Apr. 6, 2021) (plaintiff cited no evidence with respect to absent class members' agreements); *Lemp v. Seterus, Inc.*, 2022 WL 912960, at *4 (E.D. Cal. Mar. 9, 2022) (same). These cases have no relevance here; instead, just like on the merits, the closer analogy can be found in *Williams I*.

**2. Absent Class Members' Incurrence of "Consumer Debt" is Not an Issue at the Class Certification Stage**

With one readily distinguishable exception, Shellpoint's claim that class certification is precluded by the necessity of detailed individual inquiries regarding the "consumer debt" status of absent class members' loans is contrary to the entirety of the authority addressed to the issue. As in other contexts, Shellpoint does not even acknowledge authority Mr. Alvarez previously cited holding to that effect. And the Class here consists of borrowers with a residential mortgage serviced by Shellpoint – a prototypical consumer debt. Indeed, many courts to consider this issue under the Fair Debt Collection Practices Act ("FDCPA") have held that whether a mortgage is or is not a "consumer debt" can be resolved by reference to whether the loan agreement specifies that it is a loan for a residential mortgage. *See, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 874-75 (7th Cir. 2000) (mortgage was consumer debt

7

under FDCPA because it was secured by plaintiff's residence *at the time of origination*);

*Nicolaides v. Divine & Service, Ltd.*, 382 F. Supp. 3d 251, 257 (E.D.N.Y. 2019) (explaining

under the FDCPA, "courts regularly examine the terms of the credit agreement to evaluate

the nature of a "transaction" and citing cases).[2]

Mr. Alvarez previously cited *Montesi v. Seterus, Inc.*, Civ. A. No. 50-2015-CA-

010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cnty. Mar. 27, 2019), a case involving

identical fees that rejected a species of the same argument. *See id.*, *cited in* Dkt. 39, at 3.

*Montesi* in turn cited several cases in noting that "courts confronting this issue in the

analogous FDCPA context have rejected [Shellpoint's] argument, reasoning that, 'The

need to show that the transactions involved... are consumer transactions is inherent in every

FDCPA class action. If that need alone precluded certification, there would be no class

actions under FDCPA.' *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D.

Ill. 1998) (certifying class alleging collector's form collection letter violated the FDCPA).

*See also Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (certifying

class of persons mailed dunning letter and rejecting the argument that determination of the

status of the debt as consumer debt predominated over common issues); *Borcherding-*

*Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 563 (W.D. Wisc. 1999) (noting the

---

[2] *See also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 293 (6th Cir. 2012) (citing cases); *Willis v. Portfolio Recovery Assocs., LLC*, 2019 WL 2565243, at *2 (W.D. Tex. Mar. 8, 2019) (inquiry is the "purpose for which credit is extended"); *Hawthorne v. Rushmore Loan Mgmt. Servs.*, 2023 WL 6388928, at *8 (D.D.C. 2023). *Cf. Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 335 (4th Cir. 2012) (favorably citing *Miller*).

8

'determination may require only a simple check whether the debtor is an individual or business')." *Montesi*, Dkt. 39-1, at 27.[3]

Even if the Court were required to consider the "consumer debt" status of absent class members' loans in this context, it would not warrant the exhaustive investigation Shellpoint posits. For example, the court in *McCormick v. 7-Eleven, Inc.*, 2009 WL 10704102 (N.D. Tex. Mar. 12, 2009), identified absent class members with "consumer debt" via sorting of records defendant kept in the regular course of its business:

> [G]iven that CPRS's computer system sorts checks into personal and business, the Court will exercise its discretion to certify a class limited to those persons whose defaulted check was classified as personal by CPRS's computer system. With regard to this class of "personal check writers," the Court will presume that the transaction in question was consumer within the meaning of the FDCPA. At the damages phase, CPRS can rebut that presumption with regards to any individual class member. Thus, the distinction between personal and commercial debt for the purposes of the FDCPA does not impede certification of the class.

*Id.*, at *7. *See also Williams I*, 2022 WL 1216577, at *9; *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 383 (D. Utah 2020) ("[T]he court finds identifying class members by determining whether the debt was a consumer debt is ministerial in nature easily determined by a single yes or no question.") (quotation omitted); *Geary v. Green Tree Servicing, LLC*, 2017 WL 2608691, at *12 (S.D. Ohio June 16, 2017) ("[I]f there is genuine confusion over [the purpose of an absent class member's loan], class members can be asked a single question to determine whether they are entitled to relief.") (quotation omitted).

---

[3] The Court may rely on FDCPA jurisprudence in assessing TDCA issues. *See, e.g., Robledo v. Yardi Sys., Inc.*, 741 F. Supp. 3d 617, 624 (W.D. Tex. 2024).

Shellpoint can readily conduct such a simple exercise using records it keeps in the regular course of its business. Shellpoint's corporate representative Lauren Haberlan testified that:



Any number of combinations of that data might serve to identify "consumer debt" sufficiently to meet the prevailing standards in this context. Again, Shellpoint has the information necessary to mount the challenge that any class member does not have a consumer debt, but its silence in identifying such a class member is telling. And because the purpose of the loan at the time of origination, as expressed in the loan documents, controls this issue, should any further inquiry be needed, it will not overwhelm the other numerous common factual and legal issues present.

Shellpoint's claims to the contrary arise from the same erroneous premises as its other claims as to predominance. Shellpoint broadly claims that "[l]oan servicers have incentive to treat loans as consumer debts to avoid inadvertent regulatory liability," (i.e., to lie or intentionally keep inaccurate records), Dkt. 52 at 14, but does not claim having done so with respect to any class member here, much less document such an instance. Plus, Shellpoint seems to suggest that although it treats all the class members' loans as consumer

10

debts, the Court should somehow treat them differently. And all but one of the cases Shellpoint cites in this context were individual actions, where the "consumer debt" status of plaintiffs' loans might readily be decisive.[4] Finally, *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457 (5th Cir. 1999), which Shellpoint cites most prominently, was not a class action case and did not address class certification or predominance.[5]

### 3. Shellpoint Proffers No Evidence that Any Class Members' Loans Were Modified in Any Relevant Fashion

Shellpoint's brief argument that modification issues preclude class certification suffers from the same shortcomings as its other arguments as to predominance. Shellpoint again proffers no evidence relating to even a single class member, much less a contingent of class members of sufficient size to weigh in the Court's predominance assessment. That failure is particularly telling in light of Ms. Haberlan's testimony that Shellpoint's loan database flags loans that have been modified. Ex. 32, at 129:6-10.

In *Williams*, the district court dismissed defendant's similar argument as to modification in affirming the magistrate judge's report and recommendation:

> Defendants object that the Memorandum and Recommendation "fails to consider varying contract terms, *individual modification*, and notice-and-cure requirements, as well as waiver, mitigation of damages, and release." …
> At most, these individualized issues serve as affirmative defenses, a secondary matter in this litigation. And the common question of law —

---

[4] The sole exception is *Shular*, which is inapposite for reasons detailed above. *See supra* § A.1.

[5] And in any event, *Riviere* is consistent with the principle that objective evidence of the *purpose* of a loan (rather than any subsequent use) can resolve the inquiry. Here, the most persuasive evidence is the Uniform Mortgages themselves, which specify a residential purpose and require borrowers to reside in their homes as their primary residence. *See, e.g.*, Ex. 3 ¶ 6 (Alvarez Deed of Trust).

11

namely, the legality of the pay-to-pay fees — predominates over these individualized issues.

*Williams v. Lakeview Loan Servicing LLC*, 2022 WL 950875, at *4 (S.D. Tex. Mar. 30, 2022) ("*Williams II*") (emphasis added) (citing *Guenther v BP Retirement Accumulation Plan*, 2021 WL 1216377, at *7 (S.D. Tex. Mar. 12, 2021)). Conversely, the sole case Shellpoint cites in this context, *Grady v. Ocwen Loan Servicing, LLC*, 2014 WL 231952 (N.D. Ill. Jan. 21, 2014), was not a class action, and did not address predominance issues.

Again, Shellpoint's speculation does not defeat Plaintiff's showing of predominance. *Torres*, 838 F.3d at 644.

### 4. "Notice-and-Cure" Provisions in Class Members' Mortgage Documents Are Inapplicable and/or Irrelevant

As in other contexts, Shellpoint's claim that "notice-and-cure" provisions in class members' mortgage agreements weigh against class certification is contrary to principles established in cases Plaintiff previously cited. As a preliminary matter, the notice and cure provision has no applicability to Plaintiff's and the Class's statutory claims. After certifying a class, the court in *Williams* ruled at the summary judgment stage that a "notice-and-cure" provision identical to the one in Mr. Alvarez's mortgage documents does not apply to TDCA claims such as the one now before this Court:

> The language of notice-and-cure provision states that notice must be given before filing suit on any claim "that arises from the other party's actions *pursuant to* the Security Instrument or that alleges that the other party *has breached* any provision of, *or any duty owed* by reason of, this Security Instrument." (emphasis added). Therefore, the Court focuses on whether Defendants' collection of the pay-to-pay fee is an action "pursuant to" the Security Instrument.

12

> [T]he Court finds persuasive an opinion …holding that notice and cure provisions in a mortgage do not apply to statutory causes of action like those at issue here:
>
> > [B]ecause the causes of action arise directly from alleged deceptive business practices that are prohibited by the FDCPA and [Florida version of TDCA], rather than the mortgage itself ... the notice and cure provision is inapplicable. Belcher has a statutory right of action that is independent from the requirement under the mortgage agreement to give pre-suit notice.

*Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 890 (S.D. Tex. 2023) (citations omitted) ("*Williams III*"). *See also Williams II*, 2022 WL 950875, at *3 (absent class members may provide notice at the claims stage if the notice is even applicable). *See also Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011) ("The notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer."), *aff'd*, 482 F. App'x 868 (4th Cir. 2012), *cited in Williams II*, 2022 WL 950875, at *3.

But even if the Court were to adopt Shellpoint's incorrect argument that the notice provision is relevant, it would still not defeat class certification. The court in *Boczek v. Pentagon Fed. Credit Union*, 2025 WL 3068570 (N.D. W. Va. Nov. 3, 2025), *cited in* Dkt. 39, at 8, another certified class action arising from collection of nearly-identical fees in violation of state debt collection law, has also rejected the same contention, using language that might as readily apply here:

> Boczek is the only named plaintiff in this matter and provided PenFed notice and an opportunity to cure the claimed [state debt collection statute] violations without litigation. Requiring every class member to provide pre-suit notice would effectively prohibit [state debt collection statute] class actions; yet the WVCCPA contemplates class actions. … Further, the Court

13

can find no West Virginia authority requiring absent class members to provide pre- suit notice.

*Boczek*, 2025 WL 3068570, at *6. *See also Williams II*, 2022 WL 950875, at *4 (dismissing notice-and-cure requirements as "a secondary matter"); *Slamon v. Carrizo (Marcellus) LLC*, 2020 WL 2525961, at *21 (M.D. Pa. May 18, 2020) ("The presence of a notice and cure provision will not predominate over the common issues in this case as these terms do not alter the underlying claims.") (citation omitted).

Courts in other class actions have dismissed "notice-and-cure" concerns on multiple additional grounds. For example, the court in *Montesi* rejected defendant's argument "for several reasons," particularly including the fact that "the notice and cure provision states that no borrower may 'commence, join, or be joined in any judicial action...'" – as does Mr. Alvarez's notice and cure provision (Dkt. 39-2, at 9 ¶ 20) – and "[i]t is well settled that absent class members are not 'parties' to a class action and are not acting to 'commence, join or be joined' this action." *Id.*, Dkt. 39-1, at 24 (citations omitted).

Shellpoint's citation to *McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018), for the premise that Mr. Alvarez "cannot give notice on behalf of absent class members as a matter of law" is wrong. The plaintiff at issue in *McShannock* who purported to give notice could not give notice for the class because his notice was deficient as to himself. The court did not establish a rule that no plaintiff may ever give notice for absent class members. *Id.* at 1070. *See also Morandi*, 2021 WL 1398967, at *5 (notice-and-cure issues predominant because plaintiff failed to disprove defendant's claims of multiple mortgage forms used by absent class members); *Medical Components, Inc. v.*

14

*Osiris Med., Inc.*, 226 F. Supp. 3d 743 (W.D. Tex. 2016) (non-class action). Shellpoint has

said nothing tending to establish that notice-and-cure issues predominate in any sense in

this case.

### B. Mr. Alvarez is an Adequate Plaintiff.

Plaintiff's initial submission detailed Mr. Alvarez's efforts to serve the class over

the course of this action:

> Plaintiff Eugenio Alvarez has been involved with the litigation since its inception. To date, he has assisted in initial factual investigation, reviewed pleadings, searched for and produced documents, responded to interrogatories and requests for admission, and prepared and sat for a deposition. He frequently initiates contact with Proposed Class Counsel and has spoken with us at length throughout the case.

Dkt. 39-1, at 6 ¶ 40. Shellpoint disputes none of that. Nor does Shellpoint dispute Mr.

Alvarez's understanding that he is acting on behalf of all other class members who, unlike

him, are not taking any active role in the case:

Q. Mr. Alvarez, before we filed the complaint in this case, do you recall that I sent it to you to -- so that you could verify what was in the complaint?

A. Yes.

Q. Do you understand that other class members did not do that?

A. Yes.

Q. Is any other class member's name on the complaint that you know of?

A. No.

Q. Do you recall that my firm asked you to give us your bank statements?

A. Yes.

Q. Do you know -- are you aware that we asked other class members to give us their bank statements?

Q. No.

Q. Do you recall that I helped you prepare for this deposition?

A. Yes.

Q. Are you aware that any other class members are having their deposition taken in this case?

A. No.

Q. Do you and I communicate by email and on the telephone regularly?

Q. Are you aware that I communicate with any other class members regularly?

A. No.

Q. Do [you] understand that you are participating in this lawsuit on behalf of other class members?

A. Yes.

Ex. 29, at 91:2-92:14.

He further testified that he understood he was a "plaintiff in a putative class [action]," "seeking to represent a class of people." *Id.* at 33:18-34:1. He was served with and helped respond to discovery. Ex. 33 at 87:3-24. And he has demonstrated he understands the basics of his claims:

Q. Okay. When did you first understand that you -- or believed that you had a claim against Shellpoint? Was it the first time you ever paid a fee, or was it when you, you know, when you were filling out the application? When did you believe that, you know, you had a claim to assert in a lawsuit?

A. Well, when -- when I paid my mortgage they would charge me extra 7.50 to pay the mortgage. That's when I had in my mind, that's not right.

*Id.* at 31:15–32:1.

16

Q. No, I'm asking you today. What are your damages? What are you seeking to recover in this lawsuit?

A. Money that I paid in on my -- that was illegally taken away from me.

*Id.* at 81:12–16.

Mr. Alvarez's participation and understanding are entirely consistent with those of named plaintiffs who were deemed adequate in similar circumstances. The district court in *Williams I* sustained the magistrate judge's finding of adequacy where "Williams [was] actively involved, counsel is experienced in consumer class actions, and potential conflicts with ongoing class actions in which counsel is involved are minimal." *Id.*, 2022 WL 1216577, at *5. The court in *Guenther v. BP Ret. Accumulation Plan*, 2021 WL 1216377 (S.D. Tex. Mar. 12, 2021), *report and recommendation adopted*, 2021 WL 1215851 (S.D. Tex. Mar. 31, 2021), held to similar effect:

> Plaintiffs easily satisfy the adequacy requirement. Each plaintiff has volunteered his time to serve as a class representative and states a genuine willingness to vigorously prosecute the interests of the class. To date, Plaintiffs have gathered documents, sat for depositions, and met numerous times with counsel to discuss the case. Plaintiffs possess a fundamental understanding of the case sufficient to allow them to actively participate in the lawsuit as it progresses. Plaintiffs' interests appear to align with the putative class such that I am confident that there is no conflict of interest between Plaintiffs and the class they seek to represent.

*Id.*, 2021 WL 1216377, at *8.

Conversely, Shellpoint cites no authority for its claim that Mr. Alvarez is required to familiarize himself with the facts underlying the individual claims of absent class members. Dkt. 52, at 25-26. *Cf. Sanderson v. Whoop, Inc.*, 2025 WL 744036, at *5 (N.D. Cal. Mar. 7, 2025) (named plaintiff who testified he could not "speak to the claims of other

17

class members" held adequate). Nor does Shellpoint cite authority for its claim that he is required to be knowledgeable as to the legal details of his claims. Dkt. 52, at 26-27. *Cf. Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) ("[C]lass representatives need not be legal scholars and are entitled to rely on counsel.").

Finally, Shellpoint's claim that Mr. Alvarez "may also have memory issues" is both false and irrelevant. *See* Dkt. 52, at 25 n.34. The context of Shellpoint's irrelevant questioning as to Mr. Alvarez's former wife reflects that they divorced 25 years ago, that she remarried at some point, and that he cannot recall her *current* last name. Dkt. 52-1, at 25-26. That is not only unsurprising – it is completely removed from his adequacy to serve as a class representative. *See, e.g., Booth v. Galveston Cty.*, No. 3:18-cv-00104, Dkt. 213, at 15 ("[A]dequacy requires only that '[a named plaintiff] must not have damaged his or her credibility regarding those *issues that are central* to the action.'") (citing *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 364 (E.D.N.Y. 2009)) (emphasis added)), *report and recommendation adopted*, Dkt. 227 (Hanks, J.)

Cases Shellpoint cites in this context are readily distinguishable. *See* Dkt. 52, at 27. "In *Walker v. Alta Colleges, Inc.*, adequacy wasn't established where the named plaintiff stated that he didn't speak with his lawyers frequently and couldn't recall (among other things) the type of relief he was seeking, where the case had been filed, or who were named as defendants. 2010 WL 11200636, *4 (W.D. Tex. Dec. 29, 2010)." Here, the opposite is true. *McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 478–79 (S.D. Tex. 2024). Likewise, "[i]n *Byes v. Telecheck Recovery Services, Inc.*, adequacy wasn't met where the named plaintiff was unaware of her duties as proposed class representative—and had

18

submitted a false affidavit. 173 F.R.D. 421, 427–28 (E.D. La. 1997).” *McWhorter*, 748 F. Supp. 3d at 478–79. *See also Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 501-02 (N.D. Ga. 2006) (named plaintiff's lack of recall and knowledge exposed him to dismissal of his individual claim). Mr. Alvarez suffers from no comparable shortcomings. He is an adequate class representative.

## IV.    CONCLUSION

For all of the reasons above, Plaintiff respectfully requests that the Court grant his Motion for Class Certification, Appointment as Class Representative, and Appointment as Class Counsel.

Dated: March 16, 2026

**BAILEY GLASSER LLP**

*/s/ Bart D. Cohen*
James L. Kauffman (admitted *pro hac vice*)
Bart D. Cohen (admitted *pro hac vice*)
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
(202) 463-2101
jkauffman@baileyglasser.com
bcohen@baileyglasser.com

Katherine M. Aizpuru (admitted *pro hac vice*)
Robin Bleiweis (admitted *pro hac vice*)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com

*Attorneys for Plaintiff and the Proposed Class*

19

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I served the foregoing on counsel for all parties via the Court's CM/ECF system.


_/s/ Bart D. Cohen_
Bart D. Cohen